(807 P.2d 162)

No. 64,444

STATE OF KANSAS, *Appellee*, v. MIGUEL A. BASURTO, *Appellant*.

Petition for review granted April 23, 1991.

Opinion filed March 1, 1991.

*Jack Focht*, of Focht, Hughey, Hund & Calvert, of Wichita, for the appellant.

*Debra Byrd Wagner*, assistant district attorney, *Nola Foulston*, district attorney, and *Robert T. Stephan*, attorney general, for the appellee.

Before LEWIS, P.J., ELLIOTT and RULON, JJ.

LEWIS, J.: This is a direct appeal by the defendant from his convictions of the crimes of possession of marijuana with intent to sell and possession of cocaine with intent to sell.

The principal issue on this appeal is whether evidence seized under a search warrant should be suppressed. Specifically, the question is whether the officers exceeded the scope of the warrant in searching a shed in the back of the defendant's dwelling.

There appears to be no question as to the propriety of the issuance of the search warrant. The only question at issue is the permissible scope of the search permitted under the warrant. The search warrant applied for and obtained in the instant matter described the place to be searched as follows:

"2528 N. Mascot, Wichita, Sedgwick County, Kansas,. to be a single story residential structure, with white siding painted white with black trim that is the fourth (4th) residential structure south of twenty-fifth (25th) Street North on Mascot. The residence sits on the east side of Mascot facing west. The numbers 2 5 2 8 are displayed on a wood plaque in a horizontal manner directly to the north of the front door."

The warrant further described the items for which a search was to be made and then stated that those items "are located in or upon the above described persons, places, things, or means of conveyance."

The execution of the warrant took over two hours. However, this appeal involves only the legality of the search of an unattached shed or outbuilding located in the back of defendant's residence. We shall, therefore, limit our recitation of the facts to those necessary to deal with the issue presented.

The police officers, armed with the search warrant described above, first secured and then searched the defendant's residence located at 2528 North Mascot. The search of the residence itself is not at issue and was apparently routinely conducted. However, during or shortly after the residence was searched, it appears that the officers viewed the contents of an unattached shed located in the back of the residence. The shed contained what appeared to be a quantity of cocaine.

At this point, the officers appear to have been uncertain as to how to proceed. They seem to have questioned their authority to search the shed and seize the contraband items under the warrant in their possession. As a result, they first attempted to obtain a written waiver consenting to the search from the defendant's wife, who was present in the residence. Initially, the wife orally consented to the search but, after a written waiver was prepared, she refused to sign it. The officers then sought and obtained from the defendant a written waiver consenting to the search of the shed. After this was in hand, the shed was searched and a quantity of cocaine was removed.

The defendant argues that the search of the unattached shed was not authorized by the terms of the search warrant described above, which specifically only describes the residence of the defendant. As a result, defendant argues that the search of the shed

was outside the scope of the warrant and that the items seized from the shed should be suppressed. We disagree.

We also note that the defendant argues that his consent to the search of the shed was illegally obtained. As will be seen, we do not reach that issue, although we tend to agree with the defendant's arguments in that regard.

Historically, the Fourth Amendment protection against unreasonable searches and seizures has extended not only to the residence of a suspect, but also to an area surrounding the residence, which is referred to as the "curtilage." See *United States v. Dunn*, 480 U.S. 294, 300, 94 L. Ed. 2d 326, 107 S. Ct. 1134, *reh. denied* 95 L. Ed. 2d 519, 107 S. Ct. 1913 (1987); *Oliver v. United States*, 466 U.S. 170, 80 L. Ed. 2d 214, 104 S. Ct. 1735 (1984); *Hester v. United States*, 265 U.S. 57, 59, 68 L. Ed. 898, 44 S. Ct. 445 (1924). In *Dunn*, the Supreme Court of the United States points out the historical basis for the curtilage concept as follows: "The curtilage concept originated at common law to extend to the area immediately surrounding a dwelling house the same protection under the law of burglary as was afforded the house itself." 480 U.S. at 300.

Since the "curtilage" is afforded the same Fourth Amendment protection as the residence itself, it has been generally held that a search warrant describing only the residence will authorize a search of any buildings or vehicles within the "curtilage" even though they are not specifically described in the warrant. In 2 LaFave on Search and Seizures § 4.10, pp. 312-13 (2d ed. 1987), the general rule is stated:

> "A search made under authority of a search warrant may extend to the entire area covered by the warrant's description. For example, if the warrant authorizes search of a ranch, the entire acreage of the specified ranch may be searched. Similarly, if the warrant authorizes a search of 'premises' at a certain described geographical location, buildings standing on that land may be searched. This means that if the place to be searched is identified by street number, the search is not limited to the dwelling house, but may also extend to the garage and other structures deemed to be within the curtilage and the yard within the curtilage. Similarly, if the warrant also directs a search of a vehicle on the described premises, it is sufficient that the car is situated close enough to the house to be within the curtilage."

In *State v. Vicars*, 207 Neb. 325, 330, 299 N.W.2d 421 (1980), the Supreme Court of Nebraska dealt with the question of whether a search warrant describing the defendant's residence authorized the search of a shed located on the defendant's property. In answering that question in the affirmative, the Nebraska Supreme Court stated:

> "The connected question is whether the search of that shed was made pursuant to a valid search warrant. The defendant argues that the search warrant did not extend to the calf shed because the description therein is as follows: 'A green single family dwelling described as: Original Town of Thompson, Lots 16 to 22, Fr. Lots 11-15, 29S 8C 1BAF 8 Blk 7 . . . .' The defendant contends that the search warrant describes the place to be searched as the house only, and does not include any of the outbuildings. The question of whether an outbuilding, which is in the curtilage of a dwelling house, may be searched under the same warrant as that building, even though it is not specifically described, was dealt with in the case of *Bellamy v. State*, 134 Ga. App. 340, 214 S.E.2d 383 (1975). The court stated: ' "Curtilage" comes down from early English days. An out-building on the grounds is within the "curtilage" and may be searched under such a warrant, though not described specifically.' [Citation omitted.]
>
> "This view is not new. For instance, in *Ford v. State*, 34 Okl. Cr. 184, 185, 245 P. 909, 910 (1926), it was stated: 'Ordinarily, a search warrant covers the curtilage and appurtenances of the place described.' See, also, *Seals v. State*, 157 Tenn. 538, 545, 11 S.W.2d 879, 881 (1928), which also held: 'It is our opinion that a search warrant directing that a search be made of a principal building, identified by street number, authorizes the search of an outhouse so clearly appurtenant to and a part of the same premises as the coal house here involved.' Even back in 1865, it was stated: 'It would destroy the utility of the proceeding, if, beside the building principally named, all other buildings and places of concealment upon the same premises, occupied in connection with it and by the same person, could not also be searched, and by virtue of the same warrant.' *Meek v. Pierce and Another*, 19 Wis. 318, 321 (1865).
>
> "We, therefore, hold that by finding that the defendant had a reasonable expectation of privacy in the calf shed in question, a valid search warrant would be required for the search and seizure of the blue jeans. We also hold that the search warrant included the calf shed as an outbuilding appurtenant to and within the curtilage of the dwelling house, and, therefore, it was within the scope of the warrant." 207 Neb. at 330-31.

In Kansas, we appear to have adopted the rules enunciated above. In *State v. Ogden*, 210 Kan. 510, 519, 502 P.2d 654 (1972),

a search warrant directed the search of a "white frame residence" located at 1350 South Gordon, Wichita, Sedgwick County, Kansas. Operating under that warrant, evidence was seized from a trash can in the rear of the yard at 1350 South Gordon. The defendant argued that the search warrant authorized only the search of the residence described and that the search of the trash can exceeded the scope of the warrant. Our Supreme Court held the search was within the scope of that warrant. While the term "curtilage" is not used, the *Ogden* court held, at Syl. ¶ 8: "Where a search warrant authorizes the search of a 'white frame residence' located at a certain address, a search of a trash can at the rear of the yard, where contraband is found, is properly considered a part of the premises to be searched."

In *State v. McClelland*, 215 Kan. 81, 523 P.2d 357 (1974), the search warrant described a residence at 1315 Monroe and authorized a search "in or upon premises described above." Acting under that warrant, the police searched the person of the defendant who was standing by a vehicle parked in front of the house. Our Supreme Court upheld the search as within the scope of the warrant. In *State v. Waldschmidt*, 12 Kan. App. 2d 284, 740 P.2d 617, *rev. denied* 242 Kan. 905 (1987), this court recognized the curtilage concept in a case in which a police view of the "curtilage" was held to violate the defendant's Fourth Amendment rights. Although *Waldschmidt* does not deal with the scope of a search warrant under the curtilage doctrine, it clearly recognizes that doctrine as the law of this state.

There are numerous cases from other jurisdictions holding that a search warrant which describes a certain residence includes the right to search anything located within the "curtilage" of the residence described in the search warrant. For instance, see, *State v. Courtright*, 60 N.C. App. 247, 298 S.E.2d 740 (1983) (search of 1973 Thunderbird parked on street in front of residence permitted under warrant describing a " 'one story single family dwelling . . . located at 5035 Furman Pl., Charlotte' "); *Glenn v. Commonwealth*, 10 Va. App. 150, 390 S.E.2d 505 (1990) (search of a 1974 Volkswagen parked in front of a dwelling was authorized under a search warrant describing "dwelling at 1305 College Street"); *United States v. Moore*, 743 F.2d 254 (5th Cir. 1984) (search of an unattached garage authorized under warrant de-

scribing the place to be searched as "a certain building, house, or place occupied and used as a private residence located in Austin, Travis County, Texas, and being the building, house, or place of Terry Moore"); *State v. Trapper*, 48 N.C. App. 481, 269 S.E.2d 680 (1980) (search of a tin shed some 30 feet away from a house authorized under search warrant describing a "house-trailer, double wide.")

There appears to be little doubt that a search warrant which describes only the residence of a defendant will authorize the search of any vehicles or buildings within the "curtilage" of that residence.

We do not perceive there to be any question that the shed searched in the instant matter was located within the "curtilage" of the residence at 2528 North Mascot. The testimony indicates that the shed in question was metal and was located in the "rear portion of the residence in the yard." Indeed, the parties do not argue that the shed was not within the curtilage. Based upon our review of the record and statements and arguments of counsel, we hold that the shed in question was within the curtilage of the residence at 2528 North Mascot and hence its search was within the scope of the warrant.

The defendant argues that the curtilage concept does not apply under these facts. He takes the position that whether the shed was or was not within the "curtilage" is irrelevant. It is the defendant's position that the warrant in this case was so specific in its description of the place to be searched that it cannot be construed to reach outbuildings located within the curtilage. In this regard, the defendant stresses the fact that the warrant does not authorize the search of the "premises" at 2528 North Mascot, nor does the term "premises" appear in the warrant. Indeed, counsel for defendant conceded on oral argument that, had the term "premises" been used in the warrant, defendant's argument would be considerably weakened.

We concede that, in many of the authorities on this issue, the search warrant in question did employ the term "premises" in addition to a specific description of the residence to be searched. We hold, however, that the absence of the term "premises" does not negate the authority of the State to conduct a search within the "curtilage" of the residence described in the instant matter.

In *People v. Muniz,* 198 Colo. 194, 597 P.2d 580 (1979), the Supreme Court of Colorado addressed a similar argument. In that case, the search warrant commanded the officers to search a residence at "1401 W. Ada Place" in their pursuit of a sawed-off 12 gauge shotgun. The authorities, acting under that warrant, found the shotgun in an unattached storage structure approximately 30 feet from the house. This structure was in the back yard of the premises and was within a fence which encircled the back yard. The defendant in that case argued that the search of the shed was outside of the scope of the warrant, principally because the word "premises" did not appear in the affidavit. The Colorado trial court suppressed the shotgun as evidence because the word "premises" did not appear in the affidavit employed to obtain the search warrant. The Supreme Court reversed and held that the search was authorized. In that decision, the court discussed the use of the term "premises" in the context of defendant's arguments:

"The district attorney asks us to adopt a general rule that the use of the word 'premises' in a search warrant will in all instances authorize a search of all the land encompassed in the description of the property contained in the warrant. *See, United States v. Meyer,* 417 F.2d 1020 (8th Cir. 1969). We decline to do so. The word 'premises' does not have a particular meaning beyond that dictated by the circumstances in which it is used. 'Premises' can refer to a single room, *see, Black's Law Dictionary* 1344 (rev. 4th ed. 1968), a large tract of farmland, *see, United States v. Meyer, supra,* or an apartment building or other multiple use building which could not be searched without specificity in both the affidavit and the warrant. *See, People v. Alarid,* 174 Colo. 289, 483 P.2d 1331 (1971); *People v. Avery,* 173 Colo. 315, 478 P.2d 310 (1970).

"The word 'premises' was not used in the affidavit and search warrant in this case to describe with particularity the place to be searched. However, the requirements of specificity contained in the Fourth Amendment of the United States Constitution, and Art. II, Sec. 7 of the Colorado Constitution are often taxed by the use of printed forms. Every affidavit and warrant, including those on printed forms, should be carefully prepared to fit the requirements of the particular case. . . .

"Nevertheless, we have concluded that the search and seizure carried out in this case were reasonable and met Fourth Amendment requirements. The following factors are relevant to our decision. First, the sawed-off shotgun which was seized was portable contraband, of a type which the defendant would have reason to secrete, and which could be easily hidden. Detective Cinquanta first searched that place where the shotgun had been seen, and thus attempted to limit the intensity of the search. [Citations omitted.] In

the search, Cinquanta found other items in the house which he was authorized to seize. Only then did he search the shed. The shed was close to the house, in an enclosed area in which the defendant had a possessory right, and to which he had ready, expectable and permitted access. [Citation omitted.] Finally, once Cinquanta found the shotgun he ended his search. [Citations omitted.]

"In such circumstances, we cannot say that Cinquanta's conduct was unreasonable, or that he exceeded the reasonable scope of the warrant under which he acted." 198 Colo. at 198-99.

We agree with the basic thrust of the Colorado decision. While the use of the term "premises" in a search warrant may be desired to avoid arguments such as the one with which we now deal, it is not required in every instance. The law is clearly established that a search warrant which describes a specific residence authorizes a search of the "curtilage" of that residence. Indeed, a construction such as that urged by the defendant would be, in our opinion, the sort of hypertechnical construction of a search warrant which has been condemned by the United States Supreme Court. See *United States v. Ventresca*, 380 U.S. 102, 108, 13 L. Ed. 2d 684, 85 S. Ct. 741 (1965). It would appear to be a hypertechnical view of the issue to hold that the word "premises" has some magical meaning and that the failure to use that one term dooms the search in this case. We hold that the search warrant in question authorized the search of not only the residence, but of the curtilage of the defendant's residence. We also hold that the shed from which the cocaine was obtained was within the curtilage and that a search of the shed was within the scope of the search warrant issued.

The defendant has cited to us the case of *United States v. Dunn*, 480 U.S. 294. He argues that that case is helpful to him in establishing the illegality of the search. We do not agree. *United States v. Dunn* is a case wherein the United States Supreme Court found that a barn was not within the curtilage of a residence. That case does not provide any authority in support of defendant's position. Indeed, the defendant cites and relies on the dissent in *Dunn* in order to buttress his argument. We decline to follow the dissent, and we do not believe that *Dunn* mandates a reversal of the trial court's decision in the instant matter.

We pointed out earlier that the officers had obtained a written waiver in which the defendant consented to a search of the shed.

The defendant has argued that the waiver obtained was not valid. In view of our decision holding that the search of the shed was authorized under the scope of the original search warrant, we do not reach the question of whether defendant's written consent to the search was valid.

Affirmed.