(823 P.2d 205)

No. 66,147

STATE OF KANSAS, *Appellee,* v. EVERETT TINSLEY, *Appellant.*

—

Opinion filed December 13, 1991.

*Thomas Jacquinot,* assistant appellate defender, and *Jessica R. Kunen,* chief appellate defender, for appellant.

*Nanette L. Kemmerly-Weber,* county attorney, and *Robert T. Stephan,* attorney general, for appellee.

Before RULON, P.J., DAVIS, J., and JAMES P. BUCHELE, District Judge, assigned.

RULON, J.: Everett Tinsley, defendant, appeals his jury conviction of possession of marijuana with the intent to sell, K.S.A. 1990 Supp. 65-4127b(b)(3), contending the district court erred in failing to suppress evidence.

We conclude the findings of the district court supporting its decision not to suppress the evidence are based upon substantial evidence, and we will not substitute our view of the evidence for that of the district court. *State v. Brunson,* 13 Kan. App. 2d 384, 389, 771 P.2d 938, *rev. denied* 245 Kan. 786 (1989). In so holding, we adopt the "open fields exception" to the Fourth Amendment as enunciated in *Oliver v. United States,* 466 U.S. 170, 178, 80 L. Ed. 2d 214, 104 S. Ct. 1735 (1984) (Powell, J., concurring).

### UNDISPUTED FACTS

On July 13, 1989, Allen County Undersheriff Joe Robinson, KBI Special Agent Thomas Williams, and Alcohol, Tobacco, and Firearms Agent Chuck Freyermuth went to defendant's rural residence to speak with him about a drug investigation concerning another individual. When the officers arrived at defendant's house, they saw the door was padlocked from the outside. There was no response to a knock on the door, although the officers could hear noise from a television inside the house. They then went to the house's back door, which was also padlocked. Knowing Tinsley had no vehicle and that the television was playing, Robinson thought Tinsley had to be somewhere on the premises.

Robinson thought defendant could be behind or in one of the sheds located on the property. A few feet to the southeast of the house was a small storage shed. Just east of this shed was an old dairy barn. East of this barn and attached to it was a long cattle shed. Between the storage shed and the barn was a well-worn path, which was described as "kind of a driveway that goes into an open field." There were no fences on the property. Robinson walked between the storage shed and the barn, yelling defendant's name. When Robinson reached the edge of the field behind the buildings, he looked to his left and saw "numerous marijuana plants growing."

After a closer inspection of the plants, Robinson left to obtain a search warrant. The other two officers remained at the residence and when defendant returned, he consented to a search of the house and told the officers of other fields where marijuana was growing.

At the suppression hearing, Robinson testified that prior to the discovery of the marijuana plants, defendant told Robinson he had a few marijuana plants; Robinson told defendant if law enforcement officers found marijuana plants on his property in the future he would be charged. On July 13, however, Robinson had no knowledge where any plants would be growing on defendant's property. Standing at the defendant's house, the plants were not visible, but were visible only at the edge of a field about 45 to 60 feet behind the house.

Thomas Williams, testified at the suppression hearing that in his opinion, not much effort was made to hide the plants. Anyone

crossing the field behind the sheds could see the plants, although they could not be seen from the road or the immediate area surrounding the house.

The district court denied the motion to suppress, concluding: The Fourth Amendment does not apply to open fields because there is no reasonable expectation of privacy in those fields; the field at issue here is not within the defendant's curtilage and thus is not protected by the Fourth Amendment; and the mere fact of an unlawful trespass by law enforcement officers onto the open field does not create a search condemned by Fourth Amendment protection.

## OPEN FIELD DOCTRINE

On appeal, defendant's counsel fiercely argues the language and history of § 15 of the Kansas Bill of Rights prohibits warrantless searches of open fields, absent exigent circumstances. He further asserts other jurisdictions use state constitutional provisions to reject or modify the *Oliver* open fields doctrine. Even if the open fields doctrine is applicable in Kansas, defendant asserts his marijuana plants were growing in an area in which he possessed a reasonable expectation of privacy as part of his home's curtilage, which is protected by the Fourth Amendment. We disagree with defendant's contentions.

Our Supreme Court has said: "The effect of [§ 15 of the Kansas Bill of Rights] is identical to that of the Fourth Amendment to the United States Constitution." *State v. Flummerfelt*, 235 Kan. 609, 618, 684 P.2d 363 (1984). "The wording and the scope are identical for all practical purposes." *State v. Bishop*, 240 Kan. 647, 656, 732 P.2d 765 (1987). See *State v. Fortune*, 236 Kan. 248, 250, 689 P.2d 1196 (1984) (§ 15 and Fourth Amendment "usually considered to be identical").

The Fourth Amendment protection of " 'persons, houses, papers, and effects,' is not extended to the open fields." *Hester v. United States*, 265 U.S. 57, 59, 68 L. Ed. 898, 44 S. Ct. 445 (1924). The Fourth Amendment protection against unreasonable searches and seizures, however, does extend not only to a residence, but to the area surrounding the residence which is referred to as the curtilage. *State v. Basurto*, 15 Kan. App. 2d

264, 266, 807 P.2d 162 (1991). Kansas recognizes this curtilage doctrine. 15 Kan. App. 2d at 268.

The Fourth Amendment does not extend to open fields because "an individual may not legitimately demand privacy for activities conducted out of doors in fields, except in the area immediately surrounding the home." *Oliver v. United States*, 466 U.S. at 178. " ' "[O]pen fields" may include any unoccupied or undeveloped area outside of the curtilage. An open field need be neither "open" nor a "field" as those terms are used in common speech.' " *United States v. Dunn*, 480 U.S. 294, 304, 94 L. Ed. 2d 326, 107 S. Ct. 1134 (1987); *Oliver*, 466 U.S. at 180 n.11. Furthermore, because "[t]he existence of a property right is but one element in determining whether expectations of privacy are legitimate," a governmental intrusion upon an open field that is a trespass at common law does not transform that intrusion into a search for Fourth Amendment purposes. *Oliver*, 466 U.S. at 183.

*Oliver* was a consolidation of two cases where the defendants challenged on Fourth Amendment grounds searches of areas which uncovered marijuana. 466 U.S. at 173-74. In one case, law enforcement officers walked around a locked gate posted with a "No Trespassing" sign. They followed a footpath for several hundred yards. At one point, someone shouted to them, "No hunting is allowed, come back up here." Continuing, the officers eventually found marijuana growing over a mile from the defendant's home. 466 U.S. at 173. In the other case, officers entered the woods behind the defendant's house, following a path between this and another residence, until they reached two marijuana patches surrounded by chicken wire fences. 466 U.S. at 174. The *Oliver* court held both searches valid, as they occurred in open fields not subject to Fourth Amendment protection from unreasonable warrantless searches. 466 U.S. at 184.

In our case, the issue becomes whether the area where defendant was growing his marijuana was within the curtilage of his residence. If it was not within the curtilage, then it was an open field and defendant was not entitled to constitutional protections against the officers' discovery of his marijuana.

In our determination of whether an area is included within the curtilage of a residence, the central component is whether the area harbors the intimate activity associated with the sanctity of

a person's home and the privacies of life. *Dunn*, 480 U.S. at 300. Four factors have particular pertinence to the ·curtilage deter- mination: (1)·the proximity of the area claimed to be curtilage to the home; (2) whether the area is included within an enclosure surrounding the home; (3) the nature of the uses to which the area is put; and (4) the steps taken by the resident to protect the area from observation by people passing by. 480 U.S. at 301; *State v. Waldschmidt*, 12 Kan. App. 2d 284, 290, 740 P.2d 617, *rev. denied* 242 Kan. 905 (1987).

·``In *Dunn*, the United States Supreme Court concluded the area of a warrantless intrusion by government agents was not within the curtilage of the defendant's ranch house. 480 U.S.· at 296. The 198-acre ranch was completely encircled by a perimeter fence. ·Several interior fences of posts and barbed wire were also on the property. The house was about one-half mile from a public road; it and a small greenhouse were encircled by a fence. About 50 yards from this fence were two barns. One barn, the area of ·the intrusion, was encircled by a wooden fence with locked, waist- high gates. Netting was 'stretched from the·barn roof to the top of·the gates. 480 U.S. at 297.

In *Waldschmidt*, this court concluded a fenced yard that was the subject of a governmental intrusion was within the curtilage. 12 Kan. App. 2d at 290. The yard was behind and immediately adjacent to the residence. It was surrounded by a six-foot high fence of a wooden stockade-type which obstructed the view ·of the yard. The· law enforcement officer scaled the fence, placed ·his arm and flashlight over the fence, and observed marijuana plants. 12 Kan. App. 2d at 286.

Our consideration of the four factors listed in *Dunn* and *Wald- schmidt* in light of the evidence presented here leads us to the conclusion that substantial competent evidence supports the·dis- trict court's denial of the defendant's suppression motion. We are convinced the area where defendant was growing his marijuana was not within the curtilage, but was an open field.

· In considering the proximity of the area where marijuana was growing behind the cattle shed and barn to defendant's house, the testimony indicates the distance to be between 45 to 70 feet. ·While the district court found the distance to be greater than this, the photographs on which the court based its judgment of

the distance are not in the record on appeal. Although 70 feet is a short distance and the area could be said to be in close proximity to the house, our consideration of the other three factors outweighs the area's closeness to defendant's house.

The area defendant claimed to be curtilage was not included within any enclosure surrounding his home. In fact, it was undisputed that no fences or enclosures of any kind were present on the property rented by defendant. Nor did the defendant present any evidence showing the nature of any uses to which the barn and cattle shed were put. Although one of the officers testified he knew that defendant was using the storage shed, there was no evidence that defendant used the barn and cattle shed behind which the marijuana was growing. While such structures could often be presumed to be used in the "intimate activity" of a rural farm home, there is no indication defendant was engaged in activities utilizing such structures and surrounding areas.

Finally, defendant took no measures to hide the area behind the barn and cattle shed from observation by persons walking nearby. Unquestionably, the growing area could not be seen from the road passing in front of defendant's house or from the area immediately behind the house. But defendant did nothing to block the view of persons happening to walk down the path between the storage shed and barn to the field behind these buildings and the cattle shed. Nor was the marijuana concealed from the field behind the buildings. Anyone approaching the building site from this field could easily see the marijuana. We are completely satisfied the area in which the marijuana was growing was not part of the curtilage, but an open field outside of the protective ambit of the Fourth Amendment.

In light of the above, the district court did not err in denying the defendant's motion to suppress.

Affirmed.