(981 P.2d 761)

No. 82,189

STATE OF KANSAS, *Appellant,* v. TORRANCE ALEXANDER, *Appellee.*

Opinion filed June 4, 1999.

*Charles R. Reimer,* assistant district attorney, *Nola Foulston,* district attorney, and *Carla J. Stovall,* attorney general, for the appellant.

*Richard Ney,* of Law Offices of Richard Ney, of Wichita, for the appellee.

Before GERNON, P.J., PIERRON, J., and PAUL E. MILLER, District Judge, assigned.

PIERRON, J.: The State of Kansas brings this interlocutory appeal from the district court's order granting defendant Torrance Alexander's motion to suppress evidence. The State claims the district court erred in concluding the police illegally searched a trash receptacle located in front of Alexander's house near the street.

Alexander was charged with possession of cocaine with intent to sell after a prior conviction in violation of K.S.A. 1998 Supp. 65-4161(b) and intent to sell or possess cocaine with no tax stamp in violation of K.S.A. 79-5204. Alexander filed a motion to suppress all the items seized from his residence pursuant to a search warrant. These items included cocaine, over $13,000 in cash, and various items of drug paraphernalia. Alexander alleges the probable cause

supporting the search warrant was based on an illegal search of his garbage.

The facts pertaining to the search of Alexander's trash are not in dispute. A detective with the Wichita Police Department received a tip from a confidential informant that Torrance Alexander was distributing large amounts of cocaine. The detective asked Officer Michael O'Brien to investigate. Pursuant to a check of police and utility records, Officer O'Brien discovered Alexander lived with his girlfriend at a house in Wichita, Kansas. The check also revealed Alexander had a prior arrest for possession of cocaine and an arrest for distribution of cocaine.

Approximately 1 week after investigating Alexander, Officer O'Brien and another police officer noticed a trash receptacle placed in front of Alexander's residence near the street. Officer O'Brien described the container as a "push-cart type of dumpster." It had two wheels, a lid that was fastened to the handle with a rubber strap, and the initials of a private trash contractor on the side. The dumpster was placed on the grass at the end of Alexander's driveway near his mailbox, approximately 1½ feet from the curb. There was no fence surrounding Alexander's home and there was not a sidewalk across his property.

The officers took the dumpster off the property, emptied several black trash bags from the dumpster into the back of a pickup truck they had parked near the house, and then returned the dumpster to the front yard. A search of the trash revealed a package that contained a white residue. A field test indicated the residue was cocaine. The police also discovered documents in the trash verifying Alexander was a resident of the house. The police then obtained the warrant to search Alexander's house based on the evidence discovered from the trash and the information received from the confidential informant.

The district court granted Alexander's motion to suppress. In doing so, the court expressed its hesitation to expand the United States Supreme Court's ruling in *California v. Greenwood*, 486 U.S. 35, 100 L. Ed. 2d 30, 108 S. Ct. 1625 (1988), that a search of opaque trash bags placed on the curb in front of a person's residence for trash collection did not violate the Fourth Amendment.

The court noted that unlike the facts in *Greenwood*, Alexander's garbage was placed in a private container and the police had to enter Alexander's property to remove it. It concluded the dumpster was within the curtilage of Alexander's house. The court also noted its concern that the dumpster might be considered private property.

In *Greenwood*, police officers received tips on two separate occasions indicating illegal drugs were being sold from Greenwood's California home. As part of their investigation, the officers asked the neighborhood trash collector to pick up and keep separate the garbage bags that were placed for collection on the curb in front of Greenwood's house. On each occasion, the police searched the garbage bags and discovered items indicative of drug use and used the fruits of the searches to obtain warrants to search Greenwood's house. The searches of the house revealed quantities of illegal drugs, and Greenwood was arrested on felony narcotics charges. The charges were dismissed on the ground the warrantless garbage searches violated the Fourth Amendment and the California Constitution.

The Supreme Court held the warrantless search and seizure of the opaque plastic garbage bags left for collection outside Greenwood's home did not violate the Fourth Amendment. The Court stated such a search would only violate the Fourth Amendment if the persons discarding the garbage manifested a subjective expectation of privacy in their garbage that society accepted as objectively reasonable. It noted Greenwood may have had a subjective expectation of privacy in the contents of the garbage bags but concluded he had sufficiently exposed the garbage to the public, rendering his subjective expectation of privacy unreasonable. 486 U.S. at 39-41.

In this appeal, the State claims that pursuant to *Greenwood*, Alexander had no reasonable expectation of privacy in the contents of the dumpster because he placed it in an area easily accessible to the public and for the purpose of having a third party collect it. It also urges this court to construe § 15 of the Kansas Constitution Bill of Rights as having the same scope of protection as the Fourth Amendment to the United States Constitution.

Alexander contends the evidence supports the trial court's finding the dumpster was within the curtilage and not subject to a warrantless search. He claims he had a reasonable expectation of privacy in his garbage because it was placed in a latched dumpster on his property. Alexander also urges this court to construe the Kansas Constitution as independently prohibiting police from searching the trash of citizens without a warrant even if it might be allowed by the United States Constitution.

When facts material to a decision of the court on a motion to suppress evidence are not in dispute, the question of whether to suppress becomes a question of law. An appellate court's scope of review on questions of law is unlimited. *State v. Anderson*, 259 Kan. 16, 18, 910 P.2d 180 (1996).

Alexander's thorough and well-reasoned brief offers a number of strong arguments.

The Fourth Amendment to the United States Constitution states:

"The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized."

Section 15 of the Kansas Constitution Bill of Rights states:

"The right of the people to be secure in their persons and property against unreasonable searches and seizures, shall be inviolate; and no warrant shall issue but on probable cause, supported by oath or affirmation, particularly describing the place to be searched and the persons or property to be seized."

The constitutional protection against unreasonable searches and seizures extends not only to a person's residence, but to the area surrounding the residence which is referred to as the curtilage. *State v. Tinsley*, 16 Kan. App. 2d 287, 289, 823 P.2d 205 (1991).

"In our determination of whether an area is included within the curtilage of a residence, the central component is whether the area harbors the intimate activity associated with the sanctity of a person's home and the privacies of life. [Citation omitted.] Four factors have particular pertinence to the curtilage determination: (1) the proximity of the area claimed to be curtilage to the home; (2) whether the area is included within an enclosure surrounding the home; (3) the nature of the

uses to which the area is put; and (4) the steps taken by the resident to protect the area from observation by people passing by. [Citations omitted.]" 16 Kan. App. 2d at 290-91.

In *Tinsley*, the issue was whether "open fields" adjacent to a residence were a part of the curtilage. The court in *Tinsley* ruled they were not.

Alexander cites *State v. McClelland*, 215 Kan. 81, 523 P.2d 357 (1974), for the proposition that a home's curtilage has an extension which would include the location where the trash was found in the instant case. The controlling facts of that case were that a search warrant was issued for the premises of a certain residence. On arriving to execute the warrant, officers noticed an automobile parked directly in front of the house on the "parking" area between the sidewalk and the curb of the street. A person was in the vehicle and McClelland was standing alongside it.

McClelland and the vehicle were searched, and amphetamines and marijuana were found there along with more marijuana and drug paraphernalia in the house. McClelland was standing at the time of the search in the "parking area," the fee to which was vested in Shawnee County.

Alexander focuses on the portion of the opinion which states that the term "premises" as used in the search warrant includes the house and the "immediate curtilage." In *McClelland*, the area where he was searched was held to be part of the curtilage. Alexander's point is that if the curtilage includes the area near the street, the trash in the instant case was in the curtilage and could not be searched under *Tinsley* and other cases restricting searches of the curtilage.

The district court in the instant case did not discuss the four factors from *Tinsley* in concluding the dumpster was within the curtilage of Alexander's home. It did note the dumpster was on Alexander's property and there was no sidewalk across Alexander's yard to separate the property from the street.

Contrary to the district court's decision, an examination of the four factors suggests the dumpster was not within the curtilage. Although there is no evidence indicating how far the dumpster was from Alexander's home, it was not within a fence or other barrier

surrounding the home. It was placed at the end of Alexander's driveway and property line, approximately 1½ feet from the street. Any person passing by could have reached the dumpster and inspected or taken its contents.

In *Greenwood*, the Court held that the garbage bags were outside of the curtilage of Greenwood's home. It noted plastic garbage bags left on or at the side of a public street are "readily accessible to animals, children, scavengers, snoops, and other members of the public." 486 U.S. at 40. The Court stated Greenwood had sufficiently exposed his garbage to the public to defeat a claim to Fourth Amendment protection. This would appear to be a less expansive definition of curtilage than had been used by the Kansas Supreme Court in *McClelland,* at least as it refers to the placing of garbage bags for collection.

Using the discussion in *Greenwood* as a guide, it appears Alexander sufficiently exposed his garbage to the public to place it outside the curtilage of his home. *Cf. U.S. v. Long,* 993 F. Supp. 816, 819 (D. Kan. 1997) (finding trash bags placed on top of trailer within boundary of property approximately 3 feet from alley and 7 feet from attached garage was not within curtilage of residence).

The warrantless search of the dumpster under these circumstances would only violate the Fourth Amendment or the Kansas Constitution if Alexander (1) manifested a subjective expectation of privacy in the dumpster, and (2) society accepts that expectation as objectively reasonable. *Greenwood,* 486 U.S. at 39; *State v. Grissom,* 251 Kan. 851, 902-03, 840 P.2d 1142 (1992); *State v. Timley,* 25 Kan. App. 2d 779, 780, 975 P.2d 264 (1998). See Annot., *Searches and Seizures: Reasonable Expectation of Privacy in Contents of Garbage or Trash Receptacle,* 62 A.L.R.5th 1, 20-21.

Under *Greenwood,* the location of a person's garbage standing alone does not establish whether the search of the garbage was reasonable; rather, the analysis must include an examination of whether the person's expectation of privacy in the garbage is objectively reasonable. This analysis comports with Kansas cases construing the Fourth Amendment and § 15 of the Kansas Constitution Bill of Rights. See *Timley,* 25 Kan. App. 2d at 781 (citing *Greenwood* for the proposition that location is only one factor in

determining whether an individual has a reasonable expectation of privacy). See also *Tinsley*, 16 Kan. App. 2d at 290 (stating existence of a property right is only one element in determining whether expectations of privacy are legitimate); *State v. Waldschmidt*, 12 Kan. App. 2d 284, 291-92, 740 P.2d 617, *rev. denied* 242 Kan. 905 (1987) (noting curtilage is entitled to a higher degree of Fourth Amendment protection but is not free from all warrantless searches).

Other jurisdictions have similarly recognized curtilage is not the only factor a court must consider in examining the legality of a warrantless search of a person's garbage. See *U.S. v. Redmon*, 138 F.3d 1109, 1112 (7th Cir. 1998), *cert. denied* 525 U.S. 1066, 142 L. Ed. 2d 657 (1999) (noting an examination of a reasonable expectation of privacy must be conducted, not just a determination of curtilage, and holding defendant had no reasonable expectation of privacy in garbage cans next to an attached garage); *U.S. v. Comeaux*, 955 F.2d 586, 589 (8th Cir. 1992) (applying *Greenwood* even if trash cans are within the curtilage since the cans were readily accessible to public, rendering any expectation of privacy unreasonable); *State v. Hauser*, 342 N.C. 382, 386, 464 S.E.2d 443 (1995) (stating location of garbage within the curtilage of a home does not automatically establish a reasonable expectation of privacy in garbage); *Levario v. State*, 964 S.W.2d 290, 296 (Tex. App. 1997) (concluding defendant had no reasonable expectation of privacy in discarded trash even if within curtilage).

As the parties indicate, Kansas courts are not bound to follow *Greenwood* in interpreting § 15 of the Kansas Constitution Bill of Rights. As the Court noted: "Individual States may surely construe their own constitutions as imposing more stringent constraints on police conduct than does the Federal Constitution." 486 U.S. at 43. The Kansas Supreme Court has stated: "This court . . . can construe our state constitutional provisions independent of federal interpretation of corresponding provisions. [Citations omitted.] This court can interpret the Kansas Constitution to afford the citizens of Kansas more protection from governmental intrusion." *State v. Schultz*, 252 Kan. 819, 824, 850 P.2d 818 (1993).

In his brief, Alexander cites case law from several jurisdictions that have refused to follow the analysis employed by the majority in *Greenwood* and concluded persons have objectively reasonable privacy interests in the trash they set out at their curbs. See, *e.g.*, *State v. Morris*, 165 Vt. 111, 122, 125, 680 A.2d 90 (1996) (declining to follow "abbreviated" analysis of *Greenwood* majority and noting state supreme courts of California, Hawaii, New Jersey, and Washington have similarly declined). Section 15 of the Kansas Constitution Bill of Rights, however, is essentially identical to the Fourth Amendment and the Kansas Supreme Court has never extended its protections beyond those afforded by the federal Fourth Amendment guarantees. 252 Kan. at 824-26. See also *State v. Crow*, 266 Kan. 690, 698, 974 P.2d 100 (1999), and *State v. Scott*, 265 Kan. 1, 5, 961 P.2d 667 (1988) (recognizing right to interpret Kansas Constitution in manner different than United States Constitution but not traditionally doing so).

We note in *State v. Fortune*, 236 Kan. 248, Syl. ¶ 1, 689 P.2d 1196 (1984), the court stated: "The scope of the constitutional protections afforded by the Kansas Constitution Bill of Rights, Section Fifteen, and the Fourth Amendment to the United States Constitution is usually considered to be identical."

As chronicled in *Fortune*, the case of *State v. Boster*, 217 Kan. 618, 539 P.2d 294 (1975), extended greater protections from so-called inventory searches of motor vehicles than were later stated under the United State Supreme Court case of *South Dakota v. Opperman*, 428 U.S. 364, 49 L. Ed. 2d 1000, 96 S. Ct. 3092 (1976). As in the instant case, there was a split in authority among the states when *Boster* was decided. The court in *Fortune* was persuaded that the *Opperman* approach, for a number of reasons, was the better one and overruled *Boster* and its progeny.

Although our Supreme Court certainly has the authority to adopt the position suggested by Alexander and grant greater protection to people's garbage from police searches than is afforded by the United States Supreme Court, we do not believe that is its usual approach, as the discussion in *Fortune* indicates.

Alexander believes his case can be distinguished from *Greenwood* because he contracts with a private trash collector. The Court

in *Greenwood* indicated the garbage bags in issue were placed at the curb for the express purpose of having them collected by a third party. Notably, there is no evidence in the record indicating Alexander placed the dumpster by the curb for the purpose of having it collected or placed it there for collection only on specific days. Nevertheless, the majority in *Greenwood* and the many courts following its analysis, focus on public access and location, as well as the purpose of conveying the garbage to a third party, in determining the existence of a person's reasonable expectation of privacy in garbage.

"Accordingly, having deposited [the] garbage 'in an area particularly suited for public inspection and, in a manner of speaking, public consumption, for the express purpose of having strangers take it,' *United States v. Reicherter*, 647 F.2d 397, 399 (CA3 1981), respondents could have had no reasonable expectation of privacy in the inculpatory items that they discarded."

"Furthermore, as we have held, the police cannot reasonably be expected to avert their eyes from evidence of criminal activity that could have been observed by any member of the public. Hence, '[w]hat a person knowingly exposes to the public, even in his own home or office, is not a subject of Fourth Amendment protection.' [Citation omitted.]" 486 U.S. at 40-41.

As indicated, the dumpster was set out in front of Alexander's house approximately 1½ feet from the street, clearly accessible to the public. The dumpster was sufficiently exposed to the public, rendering Alexander's expectation of privacy in his garbage unreasonable.

The claimed expectation of privacy was not significantly more reasonable because his garbage was contained in a closed container with the lid strapped shut. The garbage was still accessible to the public and was presumably to be collected by a third party. See *U.S. v. Trice*, 864 F.2d 1421, 1424 (8th Cir. 1988) (stating person must do more than place trash for collection in trash can that is accessible to the public to create objectively reasonable expectation of privacy); *State v. Carriere*, 545 N.W.2d 773, 776 (N.D. 1996) (holding defendant had no reasonable expectation of privacy in contents of garbage can placed at end of driveway with strap holding cover in place).

The district court's attempt to distinguish *Greenwood* also fails. Although the police may have committed a slight trespass on Alexander's property and temporarily removed a privately owned garbage receptacle, property rights are only one element in determining the legitimacy of the expectation of privacy. See *Tinsley*, 16 Kan. App. 2d at 290. Also, that the garbage was collected by a private contractor does not distinguish *Greenwood*. The garbage is still conveyed to a third party and presumably both private and public garbage collectors are capable of sorting through the garbage they collect and allowing others to do the same. See *U.S. v. Hall*, 47 F.3d 1091, 1097 (11th Cir. 1995) (rejecting defendant's attempt to distinguish *Greenwood* on ground private company collected garbage). There is no contention by Alexander that he had arranged for any particular privacy of his garbage with the private trash collector even if such an arrangement would be significant.

Alexander also claims the dumpster was located in a "protected area" because it was next to his mail box and the receiving and sending of mail is an "intimate activity associated with the sanctity of one's home." Contrary to Alexander's position, placing the trash next to the mailbox at the edge of the street only suggests it was set out for the express purpose of having a third party collect it. A mail box does not throw out a penumbra of privacy beyond its confines.

Once Alexander placed the dumpster outside by the curb, accessible to the public, he had no reasonable expectation of privacy in his garbage. The search of the garbage by the police was lawful and the evidence lawfully seized. The district court erred in finding the police needed a warrant to search Alexander's garbage under these facts.

Reversed and remanded for further proceedings consistent with this opinion.