(319 P.3d 588)
No. 109,995

STATE OF KANSAS, *Appellant*, v. DONTAE M. PATTERSON,
*Appellee*.

Opinion filed February 28, 2014.

*Matt J. Maloney*, assistant district attorney, *Marc Bennett*, district attorney, and *Derek Schmidt*, attorney general, for appellant.

*Richard Ney*, of Ney, Adams & Shaneyfelt, of Wichita, for appellee.

Before GREEN, P.J., SCHROEDER, J., and JAMES L. BURGESS, District Judge Retired, assigned.

BURGESS, J.: Officers executed a search warrant that authorized them to search the premises of a specific Wichita address. While on the property, officers searched not only the residence but also a white Mercedes parked in the driveway. Officers recovered evidence of drug offenses from the Mercedes. Subsequent to the search, Dontae M. Patterson was charged with a number of offenses stemming from the evidence recovered in the house and car. Patterson filed two motions: one to suppress all the evidence seized pursuant to the warrant and one to separately suppress the evidence recovered from the Mercedes. The district court granted the latter motion, determining that the search warrant did not extend to the Mercedes because it did not constitute part of the residence's curtilage. The State appeals, arguing first that the Mercedes was within the residence's curtilage and second that the officers searching the vehicle did so in good faith.

## FACTS

On November 8, 2012, the Wichita Police Department applied for a warrant to search "[t]he premises of 2720 N. Erie, Wichita, Sedgwick County, Kansas." The application for the search warrant indicated that a Wichita police officer had twice in the last few months discovered marijuana residue in trash bags at that location. The application also noted that Patterson, his son, and two other individuals—an adult woman and a young adult male—lived at the residence. A district judge approved the warrant on the same day. The particularity with which the warrant described the address in question is not at issue in this appeal.

In the evening of that same day, Wichita police officers executed the search warrant. Upon arriving at the residence, officers encountered a white Mercedes parked in the driveway with the rear of the car facing the house and the front facing the street. A juvenile, later identified as Patterson's teenage son, was seated in the front seat of the vehicle. After officers secured the residence, one member of the team proceeded to search the Mercedes in the driveway. Inside the car, the officer discovered a laundry basket

containing clothing; a clear glass container reminiscent of a beaker; a box of plastic sandwich bags; a digital scale with a white, powdery residue on it; and a handgun. Officers declined to search a red Mercedes parked on the street outside the residence.

Patterson, as well as the young adult male named in the application for the warrant, were inside the house with a young juvenile when officers entered. In a bedroom within the residence, officers discovered a title document that indicated that Patterson owned a white Mercedes. In other rooms of the house, officers uncovered a second gun and a variety of other evidence of drug offenses, including cocaine residue and a quantity of marijuana.

A few days later, Patterson was charged with three charges stemming from the search of the residence and the Mercedes: possession of marijuana with the intent to distribute, criminal possession of a firearm by a felon, and possession of cocaine. In January 2013, the charges were amended to also include receipt of criminal proceeds and two counts of possession of drug paraphernalia.

Patterson subsequently filed two motions to suppress: one advocating for the suppression of all evidence obtained under the search warrant and one focused solely on the evidence seized from the Mercedes. The district court denied the motion regarding all evidence obtained under the warrant. However, the district court granted the motion to suppress the evidence from the Mercedes. In its decision, the district court focused on whether the car parked in the driveway was sufficiently within the curtilage of the residence and thus within the scope of the search warrant. Ultimately, the district court concluded that the scope of the warrant did not include the Mercedes, rendering the search illegal.

The State timely filed an interlocutory appeal.

## ANALYSIS

In appealing the suppression of the evidence from the Mercedes, the State argues first that the warrant's scope extended to the entire curtilage of the residence, including any vehicles within the curtilage. Additionally, the State reasons that even if the warrant itself did not extend to the Mercedes, the officer searching the car did so under a good-faith belief that it was included within the

warrant's scope. Patterson, however, counters these arguments, contending that the warrant's scope did not extend to the Mercedes, that the Mercedes was not within the curtilage of the property, and that good faith did not support searching the vehicle.

*Did the search warrant extend to the Mercedes parked in the driveway at the residence?*

After an examination of the caselaw, the district court determined that the search of the Mercedes exceeded the scope of the search warrant because the car was not part of the curtilage of the property at the residence. The district court based its decision entirely on legal precedent and that precedent's applicability to the specific facts of Patterson's case.

The question of whether a particular seizure occurred within the curtilage of a residence is a mixed question of fact and law. An appellate court reviews the district court's factual findings for substantial competent evidence and reviews de novo the district court's legal conclusion of whether the seizure occurred within the curtilage. *State v. Fisher*, 283 Kan. 272, 286, 154 P.3d 455 (2007). However, as the district court's decision relies solely on legal precedent, this appeal centers solely around a legal question over which this court exercises unlimited review. See 283 Kan. at 286.

As a general statement of law, it is well settled that the Fourth Amendment to the United States Constitution protects not only an individual's residence from unreasonable searches and seizures, but also the area surrounding the house called the "curtilage." *United States v. Dunn*, 480 U.S. 294, 300, 107 S. Ct. 1134, 94 L. Ed. 2d 326 (1987). This protection exists to conserve the "sanctity of a man's home and the privacies of life." *Boyd v. United States*, 116 U.S. 616, 630, 6 S. Ct. 524, 29 L. Ed. 746 (1886).

In discussing this principle and its application in Kansas, this court stated in an opinion affirmed and adopted by our Supreme Court that "it has been generally held that a search warrant describing only the residence will authorize a search of any buildings or vehicles within the 'curtilage' even though they are not specifically described in the warrant." *State v. Basurto*, 15 Kan. App. 2d 264, 266, 807 P.2d 162, *aff'd* 249 Kan. 584, 821 P.2d 327 (1991).

Operating under this general principle, this court and our Kansas Supreme Court have upheld searches of a shed behind a residence, a trash can in the rear of the yard of a residence, and an individual standing outside a residence. *State v. McClelland,* 215 Kan. 81, 84-85, 523 P.2d 357 (1974) (individual); *State v. Ogden,* 210 Kan. 510, 519, 502 P.2d 654 (1972) (trash can); *Basurto,* 15 Kan. App. 2d at 269 (shed). Additionally, the United States Court of Appeals for the Tenth Circuit has repeatedly upheld searches of vehicles and other objects within the curtilage of a residence because "outbuildings and vehicles within the curtilage of a residence are considered part of that residence for purposes of a search warrant . . . even when not named in the warrant." *United States v. Finnigin,* 113 F.3d 1182, 1186 (10th Cir. 1997); see *United States v. Porter,* No. 97-8016, 1997 WL 639318, at *1 (10th Cir. 1997) (unpublished opinion).

The specific inquiry in this case—whether the scope of a warrant extended to a vehicle located on the curtilage of the resident to be searched—is a novel one in Kansas. Only one case from this state, *State v. Coker,* No. 89,851, 2003 WL 22697577 (Kan. App. 2003) (unpublished opinion), directly addresses this issue. In *Coker,* a search warrant authorized officers to search a specific vehicle and three addresses, all owned by the focus of the warrant, Steve Rowland. Rowland lived at one of the named addresses and operated a business at another of the named addresses, which was directly adjacent to his residence. While executing the warrant, officers searched Coker's car, which was parked in the driveway between Rowland's residence and his business. On Coker's motion, the district court suppressed drug evidence found in the car.

In affirming the district court's decision, this court acknowledged the general principle that a search warrant generally applies to outbuildings and vehicles in the curtilage of the premises to be searched. 2003 WL 22697577, at *3. This court dismissed *Basurto's* inclusion of vehicles in its statement of law as a "broadly painted rule of law [that] was unnecessary to that decision" and observed that it "did not clarify whether the vehicles to which it referred meant those owned or controlled by the owner of the residence described in the search warrant or whether it meant any vehicle

which might fortuitously be present in the area during the execution of the search warrant." 2003 WL 22697577, at *3. This court then analyzed whether the car was within the curtilage of the addresses to be searched under the assumption that the warrant's scope extended to vehicles properly within the curtilage of Rowland's residence. This court ultimately concluded that "a temporary visitor's automobile is not so intimately connected to the residence being visited that it would fall under the homeowner's expected Fourth Amendment protections." 2003 WL 22697577, at *4. In fact, this court repeatedly focused on the car's proximity to Rowland's business and the likelihood of the warrant embracing an innocent customer's vehicle rather than the object of the search in affirming the district court's decision. Importantly, this court also observed the lack of evidence connecting Rowland to both Coker and her car, thus limiting any possibility of the evidence within the car being covered by the warrant. 2003 WL 22697577, at *4.

Patterson relies on this case, as well as persuasive authority from Texas and the Eastern District of Arkansas, to demonstrate that a search warrant will not extend to vehicles within the curtilage of the premises to be searched. But each of these cases is distinguishable from the instant case. In the Texas case, the warrant by its terms authorized a search of " 'all vehicles' " on the premises—regardless of whether they belonged to the object of the warrant—while the vehicle at issue arrived during the search. *State v. Barnett*, 788 S.W.2d 572, 577 (Tex. Crim. 1990). In its decision, the court disapproved of the search of the late-arriving car primarily due to the overall breadth of the warrant, focusing its analysis on whether the car constituted a vehicle on the premises for the purposes of the warrant—and not whether a warrant not naming the vehicle embraced it as part of the curtilage. 788 S.W.2d at 576 ("It is difficult to conceive of a broader description than the phrase '[i]ncluding all vehicles.' "). The Arkansas trial court's decision to suppress the evidence from the vehicle is based on a similar fault in the warrant itself: the warrant, which specifically named " 'any and all vehicles' " on the premises, was not supported by probable cause. *United States v. Swift*, 720 F. Supp. 2d 1048, 1056-57 (E.D. Ark. 2010).

Although these two cases are instructive in situations when a warrant broadly names a number of vehicles to be searched, they are inapplicable to the present situation. In the present case, the warrant clearly only named the residence. At the time officers arrived, the Mercedes was backed into the driveway and a juvenile associated with the residence was seated within. Clearly, then, the case most factually similar to Patterson's situation is *Coker*.

Even *Coker* differs in several important ways. First, in *Coker* the driveway was situated between Rowland's residence and business and presumably frequented by "innocent visitors to the residence or bona fide customers of the business." 2003 WL 22697577, at *3. In this case, neither party alleges that the driveway constitutes a public or shared area. A review of the photograph in the record on appeal, though not entirely clear, suggests that the driveway leads directly to an attached garage at the residence. Officers recovered a title confirming Patterson's ownership of a white Mercedes. The problem of the warrant potentially embracing an innocent visitor significantly lessened under the facts of this case.

Furthermore, this court in *Coker* still analyzed whether the defendant's car could properly be included within the curtilage of Rowland's properties. Patterson applies the same four factors and concludes that, under the facts of the case, the car was not embraced by the curtilage of the residence.

The ultimate question when determining whether property is embraced by a premises' curtilage is "whether the area in question is so intimately tied to the home itself that it should be placed under the home's 'umbrella' of Fourth Amendment protection." *Dunn*, 480 U.S. at 301. Four principal factors guide whether the area is under the umbrella of a residence's curtilage: (1) how near the area is to the home; (2) whether any enclosures surrounding the home embrace the area in question; (3) how the area is used; and (4) whether the resident has acted "to protect the area from observation by people passing by." *Dunn*, 480 U.S. at 301. However, *Dunn* also cautions against mechanically applying these factors.

A number of Kansas cases are instructive·on what parts of a residence are considered within the curtilage. For example, in *Mc-*

*Clelland,* our Supreme Court determined that a search warrant embraced a parking area "directly in front of the house . . . between the sidewalk and the curb of the street." 215 Kan. at 82. Although decided before *Dunn* announced the four curtilage factors, the court stated that the warrant, which named a specific residence, "included all property necessarily a part of and appearing so inseparable as to be considered a portion thereof." 215 Kan. at 84. The court reasoned that the parking area constituted part of the premises, especially given that "[p]hotographic exhibits of the area clearly show residents of the neighborhood utilized the parking area immediately in front of their respective houses for vehicle parking." 215 Kan. at 84. However, in another case, a dumpster "placed at the end of [the defendant's] driveway and property line, approximately 1½ feet from the street" without any protection from passersby was not within the curtilage of the defendant's property. *State v. Alexander,* 26 Kan. App. 2d 192, 197, 981 P.2d 761, *rev. denied* 268 Kan. 848 (1999). In a third case, a trash can found in a yard shared by duplex residents and used for both leisure purposes and as a parking area was considered to be within the duplex's curtilage even though the yard was unenclosed save for a fence on one side. *State v. Wilson,* No. 95,028, 2006 WL 2443710, at *7 (Kan. App. 2006) (unpublished opinion). And again, a vehicle positioned in a driveway shared by a business and a residence and utilized by business patrons as well as those visiting the home was not embraced by the curtilage of the residence. *Coker,* 2003 WL 22697577, at *4.

Applying the four curtilage factors and the overarching principle of whether the area in question is intimately connected with the home, the facts here indicate that the Mercedes fell well within the curtilage of the residence. First and foremost, a driveway in front of a residence is clearly a part of property that is "so inseparable as to be considered a portion thereof." *McClelland,* 215 Kan. at 84. This premise is especially true in this case, where the driveway leads directly to the garage attached to the residence. Further examination of the picture in the record supports that the driveway and the car parked on it was part of the curtilage as well. The car is backed up all the way against the garage, as close to the home

as one can park. Furthermore, there is a fence visible in the photograph that indicates that, although not protected by a gate, the car is within the fence line. At the very least, this placement suggests that the car belongs to the household. Lastly, due to the position of the vehicle, it is clearly protected "from observation by people passing by." See *Dunn*, 480 U.S. at 301. A passerby interested in looking into or otherwise interfering with the car would be forced to come down the driveway, into the fence line, and stand very close to the house in order to encounter the Mercedes.

These facts align the car with the trash can in the duplex yard and parking area in *Wilson* more than with the dumpster in *Alexander*. Compare *Wilson*, 2006 WL 2443710, at *7, with *Alexander*, 26 Kan. App. 2d at 197. Unlike in *Coker*, nothing in the record indicates that innocent business patrons or individuals unconnected with the household might be erroneously drawn into the scope of a warrant if the curtilage included the driveway or car. Instead, the driveway and Mercedes are "so intimately tied to the home itself that [they] should be placed under the home's 'umbrella' " for the purposes of the search warrant. See *Dunn*, 480 U.S. at 301. For that reason, the officers did not exceed the scope of the warrant by searching the car.

The State mentions—and Patterson highlights—cases in which federal Courts of Appeal have limited searches of vehicles on the premises to "those automobiles either actually owned or under the control and dominion of the premises owner or, alternatively, those vehicles which appear, based on objectively reasonable indicia present at the time of the search, to be so controlled." See, *e.g.*, *United States v. Gottschalk*, 915 F.2d 1459, 1461 (10th Cir. 1990). Patterson argues that the Mercedes fails this test.

The facts of the case rebut this argument. At the time officers arrived, the Mercedes was parked in the driveway very near to the house. Patterson's son, an individual listed in the application for search warrant as living at the residence, sat in the car. The position of the car in the driveway, the manner in which it was parked, and its nearness to the house all suggested that the car belonged to a resident of the household and not a visitor. Additionally, the only individuals on the property were Patterson, Patterson's son, the

young adult male named in the application for the warrant, and a juvenile under driving age. As all the individuals in the household of driving age appeared in the application and were understood by officers as living at the residence, it was reasonable to conclude that the Mercedes belonged to the owner or occupier of the premises—namely, Patterson or another person named in the warrant. Even without considering the title in Patterson's name—which was recovered at least during the search of the Mercedes, if not afterward—officers had objectively reasonable facts linking the vehicle to the premises sufficient to allow the search. As such, the district court erred in suppressing the evidence found in the Mercedes.

In finding that the Mercedes was within the curtilage of the residence and that the trial court erred in suppressing the evidence found in that automobile, the remaining issues raised on appeal are rendered moot.

Reversed and remanded.