IN THE SUPREME COURT OF THE STATE OF KANSAS

No. 109,995

STATE OF KANSAS,
*Appellant*,

v.

DONTAE M. PATTERSON,
*Appellee.*

SYLLABUS BY THE COURT

1.

The term premises in a search warrant includes all property necessarily a part of and appearing so inseparable as to be considered a portion thereof. The term premises, therefore, describes a single unit of ownership—*i.e.*, the whole of the property.

2.

A lawful search of fixed premises generally extends to the entire area in which the object of the search may be found and is not limited by the possibility that separate acts of entry or opening may be required to complete the search.

3.

A warrant to search a described premises includes any automobiles on the premises that are either owned or under the control and dominion of the premises owner or resident or, alternatively, those vehicles which appear, based on objectively reasonable indicia present at the time of the search, to be so controlled.

Review of the judgment of the Court of Appeals in 49 Kan. App. 2d 1001, 319 P.3d 588 (2014). Appeal from Sedgwick District Court; BENJAMIN L. BURGESS, judge. Opinion filed April 22, 2016.

1

Judgment of the Court of Appeals reversing the district court is affirmed. Judgment of the district court is reversed.

*Lance J. Gillett*, assistant district attorney, argued the cause, and *Matt J. Maloney*, assistant district attorney, *Marc Bennett*, district attorney, and *Derek Schmidt*, attorney general, were on the brief for appellant.

*Richard Ney*, of Ney, Adams & Shaneyfelt, of Wichita, argued the cause and was on the brief for appellee.

The opinion of the court was delivered by

STEGALL, J.: The Wichita Police Department received information that a resident of 2720 N. Erie in Wichita, Dontae Patterson, was selling narcotics. The police obtained and executed a search warrant that described the place to be searched as "[t]he premises of 2720 N. Erie, Wichita, Sedgwick County, Kansas." The warrant authorized a search for various items at the premises related to the sale of marijuana including any marijuana, drug paraphernalia, currency, records of sales, evidence of occupancy or ownership of the residence, firearms connected with the sale of marijuana, scanners or radios used in the sale, and indicia of gang affiliation or membership including clothing. The supporting affidavit identified Patterson's minor son, D.M.P., as also residing at that location. The affidavit indicated that D.M.P. had a juvenile criminal record and was flagged as a member of a criminal street gang in the Wichita Police Department's database.

During the search of the house, officers found various amounts of marijuana, a white chunk-like residue that field-tested positive for cocaine, a digital scale, $10,020 in cash, a bag of marijuana seeds, and a Glock firearm. Officers also searched a Mercedes parked in the driveway and found a glass container with white crusty residue, a box of sandwich bags, a digital scale with powdery residue, and a Taurus handgun. At the time

the warrant was executed, Patterson was inside the house and D.M.P. was sitting in the driver's seat of the Mercedes. Following the search, Patterson was arrested and charged with various crimes including distribution of marijuana, felon in possession of a firearm, possession of cocaine, and possession of drug paraphernalia.

Patterson filed numerous motions to suppress the evidence obtained during the search, including a motion to suppress the evidence found in the Mercedes. At the suppression hearing, Wichita Police Officer John Groh testified that as he and other officers approached the home to execute the warrant, he saw a white Mercedes backed into the driveway and a juvenile male sitting behind the steering wheel. Groh testified the juvenile was D.M.P. Groh described the Mercedes as backed up to "within a few feet" of the house. The car was parked, engine not running, and facing the street. Following safety protocol, Groh and other officers ordered D.M.P. out of the car. Officers then secured the home and its occupants and conducted a concurrent search of both the vehicle and the residence.

The district court granted Patterson's motion to suppress the evidence found in the Mercedes on the grounds that it was not within the scope of the search warrant and the evidence would not have inevitably been discovered. The State took a timely interlocutory appeal, and the Court of Appeals reversed the district court's decision. *State v. Patterson*, 49 Kan. App. 2d 1001, 319 P.3d 588 (2014). The panel held that the search warrant for the "premises" authorized the search of any vehicles within the curtilage of the home, and the Mercedes was within the curtilage. 49 Kan. App. 2d at 1007-10. We granted Patterson's petition for review.

ANALYSIS

This appeal presents only one question:  Was the search of the Mercedes authorized by (or within the scope of) the search warrant? Patterson argues the Court of

3

Appeals erroneously concluded the Mercedes was within the curtilage of the residence described in the search warrant—and that it was therefore outside the scope of searches authorized by the warrant. The State, unsurprisingly, argues that the Court of Appeals panel correctly found that the Mercedes was located within the curtilage and was therefore included within the scope of the warrant's authorized search of the premises.

Our standard of review in cases such as this is well established:

"An appellate court generally reviews a trial court's decision on a motion to suppress using a bifurcated standard. The trial court's findings are first reviewed to determine whether they are supported by substantial competent evidence. Appellate courts do not reweigh the evidence, assess the credibility of the witnesses, or resolve conflicting evidence. The ultimate legal conclusion regarding the suppression of evidence is then reviewed de novo. If the material facts in a trial court's decision on a motion to suppress evidence are not in dispute, the question of whether to suppress is a question of law over which an appellate court has unlimited review. [Citation omitted.]" *State v. Martinez*, 296 Kan. 482, 485, 293 P.3d 718 (2013).

"On a motion to suppress evidence, the State bears the burden of proving to the district court the lawfulness of the search and seizure by a preponderance of the evidence." *State v. Porting*, 281 Kan. 320, 324, 130 P.3d 1173 (2006). Here, material facts are not in dispute, and we exercise plenary review. See *Martinez*, 296 Kan. at 485.

The Fourth Amendment to the United States Constitution requires that "no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized." "The scope of Section 15 of the Kansas Constitution Bill of Rights is identical to that of the Fourth Amendment to the United States Constitution." *State v. LeFort*, 248 Kan. 332, 334, 806 P.2d 986 (1991); see also K.S.A. 2015 Supp. 22-2502(a) (Statute authorizes the

4

issuance of search warrants "which particularly describes a person, place or means of conveyance to be searched and things to be seized.").

"To satisfy the specificity requirement of the constitutions the search warrant must describe the premises to be searched with sufficient particularity to permit the executing officer to locate the same from the face of the warrant. [Citations omitted.]" *LeFort*, 248 Kan. at 334-35; see also *Steele v. United States No. 1*, 267 U.S. 498, 503, 45 S. Ct. 414, 69 L. Ed. 757 (1925) ("It is enough if the description is such that the officer with a search warrant can, with reasonable effort ascertain and identify the place intended."). "The purpose of this requirement is to prevent general searches and to prevent the seizure of an item at the discretion of the officer. [Citations omitted.]" *LeFort*, 248 Kan. at 337. "If the scope of the search exceeds that permitted by the terms of a validly issued warrant or the character of the relevant exception from the warrant requirement, the subsequent seizure is unconstitutional without more." *Horton v. California*, 496 U.S. 128, 140, 110 S. Ct. 2301, 110 L. Ed. 2d 112 (1990).

"[W]arrants and their supporting affidavits are interpreted in a common sense, rather than a hypertechnical, fashion. To do otherwise would tend to discourage police officers from submitting their evidence to a judicial officer before acting." *LeFort*, 248 Kan. at 335-36; see K.S.A. 22-2511 ("No search warrant shall be quashed or evidence suppressed because of technical irregularities not affecting the substantial rights of the accused."); see also *United States v. Young*, 263 Fed. Appx. 710, 713 (10th Cir. 2008) (unpublished opinion) ("The scope of a warrant is determined using 'a standard of practical accuracy rather than technical precision.'").

Here, the warrant accurately and particularly described the place to be searched as "[t]he premises of 2720 N. Erie, Wichita, Sedgwick County, Kansas." The only question presented is whether, as a matter of law, this description was broad enough to include the

5

search of the Mercedes parked in the driveway. As a general matter, "the term 'premises' as used in [a] warrant include[s] all property necessarily a part of and appearing so inseparable as to be considered a portion thereof." *State v. McClelland*, 215 Kan. 81, 84, 523 P.2d 357 (1974) (citing *State v. Caldwell*, 20 Ariz. App. 331, 334, 512 P.2d 863 [1973] ["A search of premises, however, may include all property necessarily a part of the premises and so inseparable as to constitute a portion thereof."]). The term premises, therefore, describes a single unit of ownership—*i.e.*, the whole of the property.

In *State v. Basurto*, 15 Kan. App. 2d 264, 807 P.2d 162, *aff'd* 249 Kan. 584, 821 P.2d 327 (1991), a Court of Appeals case this court adopted and affirmed, the court was confronted with a warrant that did not include the term "premises" or a like description of the entire unit of ownership. The *Basurto* panel concluded that even in the absence of a broader description of a unit of ownership, the description of a residence included its curtilage. See 15 Kan. App. 2d at 266-71. *Basurto* reasoned that "[w]hile the use of the term 'premises' in a search warrant may be desired to avoid arguments such as the one with which we now deal, it is not required in every instance. The law is clearly established that a search warrant which describes a specific residence authorizes a search of the 'curtilage' of that residence." 15 Kan. App. 2d at 271.

"At common law, the curtilage is the area to which extends the intimate activity associated with the 'sanctity of a man's home and the privacies of life,' . . . and therefore has been considered part of home itself for Fourth Amendment purposes." *Oliver v. United States*, 466 U.S. 170, 180, 104 S. Ct. 1735, 80 L. Ed. 2d 214 (1984) (quoting *Boyd v. United States*, 116 U.S. 616, 630, 6 S. Ct. 524, 29 L. Ed. 746 [1886]). Courts have defined curtilage "by reference to the factors that determine whether an individual reasonably may expect that an area immediately adjacent to the home will remain private." *Oliver*, 466 U.S. at 180. The Court has referenced four factors for resolving whether a particular area is curtilage:

6

"[1] the proximity of the area claimed to be curtilage to the home, [2] whether the area is included within an enclosure surrounding the home, [3] the nature of the uses to which the area is put, and [4] the steps taken by the resident to protect the area from observation by people passing by. [Citation omitted.]" *United States v. Dunn*, 480 U.S. 294, 301, 107 S. Ct. 1134, 94 L. Ed. 2d 326 (1987).

The Court clarified, however, that those factors are not a process to be "mechanically applied" but "are useful analytical tools only to the degree that, in any given case, they bear upon the centrally relevant consideration—whether the area in question is so intimately tied to the home itself that it should be placed under the home's 'umbrella' of Fourth Amendment protection." 480 U.S. at 301.

Therefore, when considering the scope of a warrant describing a residence only (*i.e.*, a warrant lacking any broadening language such as "premises" that would clearly include the entire "property" on which the home is situated) it is reasonable for courts to conclude, as did *Basurto*, that the scope of such a warrant is coterminous with the "umbrella" of the home's Fourth Amendment protection. So while the legal definitions and doctrines of curtilage began as a shield with which individuals could protect themselves against warrantless searches, numerous jurisdictions including our own have reasonably used the concept of curtilage as a sword with which the State can expand the scope of a warrant that only specifically describes a home to be searched. See, *e.g.*, *United States v. Cannon*, 264 F.3d 875, 881 (9th Cir. 2001) ("A search warrant for a residence may include all other buildings and other objects within the curtilage of that residence, even if not specifically referenced in the search warrant."); *United States v. Gorman*, 104 F.3d 272, 275 (9th Cir. 1996) ("If a search warrant specifying only the residence permits the search of 'closets, chests, drawers, and containers' therein where the object searched for might be found, so should it permit the search of similar receptacles located in the outdoor extension of the residence, *i.e.*, the curtilage, such as the container

7

in this case. To hold otherwise would be an exercise in pure form over substance."); *Commonwealth v. McCarthy*, 428 Mass. 871, 873, 705 N.E.2d 1110 (1999) (scope of warrant describing residence extends to automobiles located within the curtilage); *State v. Woodrome*, 407 S.W.3d 702, 708 (Mo. App. 2013) ("[I]f a dwelling is subject to search, as by a warrant, then the curtilage may also be searched pursuant to the warrant, even if it is not specifically mentioned in the warrant"); *State v. Vicars*, 207 Neb. 325, 330-31, 299 N.W.2d 421 (1980) (A search warrant which directs that a search be made of a specific dwelling house also authorizes the search of outbuildings included within the curtilage, although not described specifically.).

Without disturbing the *Basurto* rule today, we note explicitly what *Basurto* implicitly acknowledged—using the doctrine of curtilage to define the outer scope of a search warrant is less than ideal. Defining curtilage, particularly according to the *Dunn* factors, is a complex legal exercise and risks "hypertechnical" warrant interpretations which, at a minimum, will interfere with the ability of law enforcement officers to clearly understand the extent of the warrant. Using the concept of curtilage in such a cross-over fashion likewise risks unintended consequences in future, yet-to-be-contemplated cases and factual scenarios. See, *e.g.*, *Dunn*, 480 U.S. at 313-14 (Brennan, J., dissenting) (arguing that in narrowing the definition of curtilage, "the Court also narrows the scope of searches permissible under a warrant authorizing a search of building premises").

Fortunately, in Patterson's case, the issuing magistrate included terms—specifically the term "premises"—in the warrant itself setting the outer boundary of the warrant's scope at the totality of the unit of property ownership. Applying this kind of "property-rights baseline" to Fourth Amendment issues has the clear virtue of keeping "easy cases easy." *Florida v. Jardines*, 569 U.S. ___, 133 S. Ct. 1409, 1417, 185 L. Ed. 2d 495 (2013). As such, we conclude that an analysis of the extent of the curtilage of the home—and whether the Mercedes was within the curtilage—is unnecessary in this case

because the Mercedes was, without any doubt, on the premises described in the warrant. See *State v. Sprague*, 303 Kan. 418, 435, 362 P.3d 828 (2015) (citing *McClelland* and holding that a warrant using the term "home" in conjunction with a description of "areas outside the home" was sufficient to describe the entire premises and included outbuildings on the property); see also *State v. Ogden*, 210 Kan. 510, 518-19, 502 P.2d 654 (1972) (trashcan in a yard "was properly considered as a part of the 'premises' to be searched").

Our conclusion that the Mercedes was physically located within the area described by the warrant does not entirely resolve Patterson's appeal. Presumptively, all containers within the scope of a search warrant can themselves be searched without a separate search warrant specific to that container:

> "A lawful search of fixed premises generally extends to the entire area in which the object of the search may be found and is not limited by the possibility that separate acts of entry or opening may be required to complete the search. Thus, a warrant that authorizes an officer to search a home for illegal weapons also provides authority to open closets, chests, drawers, and containers in which the weapon might be found. A warrant to open a footlocker to search for marihuana would also authorize the opening of packages found inside. A warrant to search a vehicle would support a search of every part of the vehicle that might contain the object of the search. When a legitimate search is under way, and when its purpose and its limits have been precisely defined, nice distinctions between closets, drawers, and containers, in the case of a home, or between glove compartments, upholstered seats, trunks, and wrapped packages, in the case of a vehicle, must give way to the interest in the prompt and efficient completion of the task at hand." *United States v. Ross*, 456 U.S. 798, 820-21, 102 S. Ct. 2157, 72 L. Ed. 2d 572 (1982).

The State suggests, with significant support, that a vehicle physically located within the scope of a warrant is simply another one of the many containers that could

hold the evidence being sought. See, *e.g.*, *United States v. Napoli*, 530 F.2d 1198, 1200 (5th Cir. 1976) ("We think that the reference to 'on the premises known as 3027 Napoleon Avenue' was sufficient to embrace the vehicle parked in the driveway on those premises."); *Massey v. Commonwealth*, 305 S.W.2d 755, 756 (Ky. 1957) ("it is not more necessary to describe a car on the premises than it would be to describe any other item of personal property in which the liquor might be stored"); *Commonwealth v. Fernandez*, 458 Mass. 137, 144-46, 934 N.E.2d 810 (2010) (search warrant encompassed driveway where defendant parked his vehicle and police were authorized to search); see also 2 LaFave, Search & Seizure, A Treastise on the Fourth Amendment § 4.10(c) Vehicles on or near described premises, pp. 953-58 (5th ed. 2012) (collecting numerous sources allowing searches of vehicles on the premises).

In response, Patterson cites authority for the proposition that when containers are mobile and accompanied by reasonable indications of innocent ownership, the general rule will not apply. Patterson points out that the Court has noted "a person's mere propinquity to others independently suspected of criminal activity does not, without more, give rise to probable cause to search that person." *Ybarra v. Illinois*, 444 U.S. 85, 91, 100 S. Ct. 338, 62 L. Ed. 2d 238 (1979). Following this reasoning, the warrant at issue in *Ybarra* to search the Aurora Tap Tavern and its bartender for cocaine did not authorize the search of every customer in the tavern. 444 U.S. at 91; see also *State v. Vandiver*, 257 Kan. 53, 63, 891 P.2d 350 (1995) ("For a warrant to authorize a search of all persons on the premises where the warrant is being executed, the affidavit must contain facts sufficient for the issuing magistrate to believe that the premises are confined to ongoing illegal activity and that every person within the orbit of the search possesses the items sought by the warrant.").

Similarly, Patterson suggests, a vehicle is a mobile container that may have arrived innocently on the premises and may have no connection with the criminal activity giving

rise to the underlying probable cause supporting the issuance of the warrant. Patterson's position is, again, not without support in our caselaw. In *State v. Coker*, No. 89,851, 2003 WL 22697577 (Kan. App. 2003) (unpublished opinion), the defendant had arrived at the residence described in the search warrant just prior to the search in order to give a resident a ride. The court concluded that a visitor, and the visitor's automobile (to which probable cause of illegal activity was never extended), was not within the scope of the search warrant. 2003 WL 22697577, at *3-4.

The Tenth Circuit Court of Appeals has addressed this issue in some detail. In *United States v. Gottschalk*, 915 F.2d 1459, 1461 (10th Cir. 1990), the court articulated the rule that a vehicle located within the physical scope of the warrant is "generally include[d] . . . if the objects of the search might be located therein." *Gottschalk* went on, however, to articulate an exception to this general rule:

> "[T]he better rule in these circumstances is to define the scope of the warrant to include those automobiles either actually owned or under the control and dominion of the premises owner or, alternatively, those vehicles which appear, based on objectively reasonable indicia present at the time of the search, to be so controlled. Thus where the officers act reasonably in assuming that the automobile is under the control of the premises owner, it is included in the warrant." 915 F.2d at 1461.

We are convinced that the *Gottschalk* test is correct, and we adopt it. The Court of Appeals panel below likewise applied the *Gottschalk* test and concluded that objectively reasonable indicia present at the time of the search indicated the Mercedes was controlled by Patterson. *Patterson*, 49 Kan. App. 2d at 1009-10. The panel emphasized that "[t]he position of the car in the driveway, the manner in which it was parked, and its nearness to the house all suggested that the car belonged to a resident of the household and not a visitor." 49 Kan. App. 2d at 1009. Further,

11

"the only individuals on the property were Patterson, Patterson's son, the young adult male named in the application for the warrant, and a juvenile under driving age. As all the individuals in the household of driving age appeared in the application and were understood by officers as living at the residence, it was reasonable to conclude that the Mercedes belonged to the owner or occupier of the premises—namely, Patterson or another person named in the warrant." 49 Kan. App. 2d at 1009-10.

Patterson suggests these facts are irrelevant because there was no evidence Patterson was the owner of the residence. The Tenth Circuit recently confronted this same argument and clarified the *Gottschalk* rule:

"While *Gottschalk* rejects a broad authority to search any vehicle located within the curtilage of a premises to be searched—it would, for example, prevent officers from searching a guest's vehicle that was incidentally present within the curtilage at the time of the search, see [915 F.2d at 1460-61—its holding and rationale are sufficiently broad to encompass vehicles actually or apparently owned or controlled by long-term residents who exercise possessory ownership of the premises." *United States v. Hohn*, 606 Fed. Appx. 902, 909 (10th Cir. 2015) (unpublished opinion).

The affidavit affixed and incorporated into the search warrant stated that Patterson lived at the residence. The panel's summation of the objectively reasonable indicia concerning the Mercedes is supported by the record. The panel correctly noted the location of the vehicle is itself indicative of a close relationship between whoever drove the vehicle and the residence. Further, Patterson's son, a juvenile who was named in the warrant, was sitting in the front seat of the Mercedes when the officers arrived on the scene. Given these factors—which were reasonably apparent to the officers at the time of the search—we conclude that the search of the Mercedes was authorized by the warrant and the incriminating evidence located therein was lawfully discovered.

12

The decision of the Court of Appeals reversing the decision of the district court is affirmed, and the judgment of the district court is reversed.