NOT DESIGNATED FOR PUBLICATION

No. 115,210

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

STATE OF KANSAS,
*Appellee*,

v.

DEZAREE JO MCQUEARY,
*Appellant*.

MEMORANDUM OPINION

Appeal from Saline District Court; RENE S. YOUNG, judge. Opinion filed June 23, 2017. Affirmed.

*Rick Kittel*, of Kansas Appellant Defender Office, for appellant.

*Brock R. Abbey*, assistant county attorney, *Ellen Mitchell*, county attorney, and *Derek Schmidt*, attorney general, for appellee.

Before GARDNER, P.J., PIERRON, J., and BURGESS, S.J.

*Per Curiam*: Dezaree Jo McQueary was charged with (1) possession of methamphetamine; (2) possession of drug paraphernalia; (3) two counts of criminal use of a weapon; and (4) possession of marijuana. She filed a motion to suppress evidence resulting from the seizure. She argued the stop was an illegal seizure and all evidence derived from the stop should be suppressed.

A hearing on the motion to suppress was held on March 4, 2015. Officer Jones testified he had stopped Jesus Reyna and McQueary on April 29, 2014. Officer Jones was

parked in a church parking lot, across the street from the Casey's, and was running tag numbers when he ran a tag for a Cadillac at a gas pump at Casey's. The tag came back to Reyna. Officer Jones and Officer Garcia had discussed Reyna in the past, but Officer Jones did not know that this particular vehicle was associated with Reyna until he ran the tag. He knew Reyna had a warrant out for his arrest. Officer Jones was also aware that Reyna was associated with a dark gray Cadillac.

Officer Jones watched the vehicle and notified Officer Hanus that he thought Reyna was in a vehicle at the Casey's. Officer Jones observed a female exit the passenger side of the vehicle and go inside the Casey's. She came out with two large sodas. Officer Jones stated it was suspicious to him that the vehicle was parked at a pump, but the driver never got out to pump gas. Officer Jones then testified subjects with warrants often do not want to be seen and he was plainly visible where he was parked in a patrol car. At no point did anyone pump gas while the vehicle was parked at the pump.

The vehicle then left the Casey's and Officer Jones decided to follow it. The vehicle immediately returned to Casey's and parked in a stall. Officer Jones found it odd the vehicle returned to Casey's just after it left because it seemed as though their business was done there. He pulled in behind the vehicle and initiated a traffic stop by turning on his lights and calling in to dispatch. Office Jones positioned his patrol car behind the vehicle on the driver's side and Officer Hanus pulled in directly behind Officer Jones.

Officer Jones asked the driver for his name. The driver identified himself as Reyna. Officer Jones also determined the identity the passenger as McQueary. Officer Jones opened the door to get Reyna out of the vehicle because Reyna had a warrant. After a struggle, Reyna was handcuffed. Reyna had a glass pipe protruding from one of his pockets. At that point, McQueary approached them and Officer Jones told her to get back. He did not want her to get back in the vehicle, as there was paraphernalia that was visible. Officer Jones held McQueary's arm and escorted her to the back of the vehicle

2

when he heard a metallic sound as something hit the pavement. He looked down and it was a firearm. McQueary stated the gun was concealed in the front left pocket of the sweatshirt she was wearing.

Officer Hanus searched Reyna and found a glass methamphetamine pipe and a plastic baggie containing 2.4 grams of methamphetamine. A search of the car revealed baggies and more glass pipes. A broken glass pipe in a tin was found in a purse on the right front passenger seat. McQueary admitted she had used methamphetamine from that pipe and she knew it was in her purse.

McQueary and Reyna were arrested. On the way to the jail after McQueary had been advised of her rights, she acknowledged that the purse in the vehicle was hers.

The motion to suppress was denied on March 16, 2015. The district court determined Officer Jones had reasonable suspicion to believe that Reyna was the driver of the vehicle. The totality of the circumstances that gave rise to reasonable suspicion included that Officer Jones had been told Reyna was associated with a gray Cadillac; the tag for the gray Cadillac was registered to someone with the last name of Reyna; the behavior of the driver of the gray Cadillac, that he pulled up to a gas pump but did not get gas or exit the vehicle; and the vehicle left the gas pump and proceeded to drive and park in an area that would not be visible to the officer after the passenger had already entered the store and returned with soft drinks. The court believed Officer Jones had reasonable suspicion to conduct a *Terry* stop and determine whether the driver of the vehicle was Reyna.

McQueary waived her right to jury trial and the case went to a bench trial on stipulated facts. The stipulation specifically preserved the suppression issue for appellate review.  On August 10, 2015, the district court found McQueary guilty of count 1, unlawful possession of methamphetamine. The State dismissed the remaining counts.

3

On appeal, McQueary argues the district court erred when it denied her motion to suppress evidence resulting from the seizure because the officer lacked reasonable suspicion. We affirm.

The standard of review of a district court's decision on a motion to suppress is a bifurcated standard. The appellate court reviews the district court's factual findings to determine whether they are supported by substantial competent evidence. The ultimate legal conclusion is reviewed using a de novo standard. In reviewing the factual findings, the appellate court does not reweigh the evidence or assess the credibility of witnesses. *State v. Patterson*, 304 Kan. 272, 274, 371 P.3d 893 (2016).

Here, McQueary argues the officers lacked reasonable suspicion required for an investigatory stop. She argues the evidence from the illegal seizure should be excluded.

The United States Supreme Court has developed a totality of the circumstances test to determine whether an encounter is consensual or if there has been a seizure. See *State v. Thompson*, 284 Kan. 763, 775, 166 P.3d 1015 (2007). Under this test, an encounter with law enforcement is consensual if, under the totality of the circumstances, a reasonable person would feel free to go about his or her business and no reasonable suspicion is required. *State v. Reason*, 263 Kan. 405, 410, 951 P.2d 538 (1997).

There are several factors to help determine whether a law enforcement encounter is voluntary or an investigatory detention. This list includes "the presence of more than one officer, the display of a weapon, physical contact by the officer, use of a commanding tone of voice, activation of sirens or flashers, a command to halt or to approach, and an attempt to control the ability to flee. *State v. Thomas*, 291 Kan. 676, 683, 246 P.3d 678 (2011). The facts of each case are analyzed independently. 291 Kan. at 684.

4

Officer Jones conducted an investigatory stop of Reyna and McQueary. He initiated the stop by turning on his lights and calling dispatch. He also called for backup, and Officer Hanus was soon present at the scene. Officer Jones positioned his patrol car behind the gray Cadillac on the driver's side and Officer Hanus parked behind him. Based on this information, a reasonable person would not feel free to leave the encounter. See *Reason*, 263 Kan. at 410.

The Fourth Amendment to the United States Constitution guarantees the "right of the people to be secure in their persons, houses, papers and effects against unreasonable searches and seizures." Section 15 of the Kansas Constitution Bill of Rights provides this same protection. *State v. Anderson*, 281 Kan. 896, 901, 136 P.3d 406 (2006). Generally, a law enforcement officer may stop any person in a public place if the officer reasonably suspects the person is committing, has committed, or is about to commit a crime. See K.S.A. 22-2402(1); *Thomas*, 291 Kan. at 687. When considering whether an officer had reasonable suspicion, courts determine "whether [the officer] articulated specific facts which would support a reasonable suspicion" that the person violated the law. *State v. Marx*, 289 Kan. 657, 674, 215 P.3d 601 (2009).

An officer's conduct is judged "'in light of common sense and ordinary human experience.'" *State v. DeMarco*, 263 Kan. 727, 735, 952 P.2d 1276 (1998). The determination is made "'with deference to a trained law enforcement officer's ability to distinguish between innocent and suspicious circumstances, [citation omitted], remembering that reasonable suspicion represents a "minimum level of objective justification."'" 263 Kan. at 735. Nevertheless, the Kansas Supreme Court has articulated that courts should not give "total, or substantial, deference to law enforcement's opinion concerning the presence of reasonable suspicion." *State v. Moore*, 283 Kan. 344, 359, 154 P.3d 1 (2007). Instead, the court has emphasized that because the question of whether

5

reasonable suspicion exists depends on the totality of the circumstances, therefore, "a case-by-case evaluation is required." 283 Kan. at 359.

Reasonable suspicion is a less demanding standard than probable cause and requires a showing considerably less than a preponderance of the evidence. *Illinois v. Wardlow*, 528 U.S. 119, 123, 120 S. Ct. 673, 145 L. Ed. 2d 570 (2000). However, the Fourth Amendment requires at least a minimal level of objective justification which an officer must be able to articulate as more than a hunch of criminal activity. 528 U.S. at 123.

McQueary argues this case is analogous to *State v. Steen*, 28 Kan. App. 2d 214, 215, 13 P.3d 922 (2000). In *Steen*, the officer observed a black male driving and a black female riding in a car. The officer ran a check on the car's license plate in a computerized database. The results of the check indicated that a black male by the name of Damon DeWayne Steen was associated with the vehicle. The officer also learned a person with that name had an outstanding arrest warrant. The officer stopped the car and checked the driver's license, which stated the driver's name was Steen. The officer then arrested Steen on the outstanding warrant, searched him, and found marijuana.

The *Steen* court was concerned about the database because it did not know whether Steen's name was retrieved from the database because "he happened to be a witness from outside the car when it was involved in a collision on some previous occasion or because he had driven it or been a passenger in it on some previous occasion." 28 Kan. App. 2d at 216. If his name was associated with the car through the first type of encounter, the *Steen* court determined that his name in the database would not have been a meaningful predictor of his presence in the car on that day. 28 Kan. App. 2d at 216.

The *Steen* court found there was no reasonable suspicion to stop the vehicle, and on remand it required the State to present evidence that the database included only those associated with cars because they occupied them previously as a driver or a passenger. 28 Kan. App. 2d at 218. Further, the *Steen* court ordered the State to show that if persons in the database were not limited to those who had driven or been riders in the car, the officer must receive information from the database or elsewhere to establish a link before the stop is made. 28 Kan. App. 2d at 218.

Based on *Steen*, McQueary argues Officer Jones knew nothing that would support a reasonable suspicion that the gray Cadillac he was looking at was the same gray Cadillac associated with Reyna. Further, she argues the officer here knew less than the officer in *Steen*, as here the officer could not identify the driver or the passenger of the gray Cadillac. Based on this case, McQueary argues Officer Jones did not have reasonable suspicion when he activated his emergency lights and made the illegal stop.

There is a great difference between this case and *Steen*. In *Steen*, the computerized database results indicated Steen was associated with the car. The *Steen* court remanded the case and required the State to establish that the officer who ran the check had specific information regarding the link before the stop was made. 28 Kan. App. 2d at 218. Here, Officer Jones did not know this particular vehicle was associated with Reyna until he ran the tag number, but he did know Reyna was associated with a dark gray Cadillac. Officer Jones and Officer Garcia had discussed Reyna previously, and Officer Jones knew Reyna had a warrant out for his arrest. While the tag information came from a database, Officer Jones had personal knowledge regarding the link between Reyna and the gray Cadillac. That, in addition to the odd behavior Officer Jones observed while the vehicle was at the Casey's, gave him reasonable suspicion to conduct an investigatory stop.

7

Because Officer Jones had a reasonable suspicion to conduct the investigatory stop, the district court was correct to deny the motion to suppress and to allow the subsequent evidence in at trial. The district court is affirmed.

Affirmed.