NOT DESIGNATED FOR PUBLICATION

No. 116,424

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

STATE OF KANSAS,
*Appellee*,

v.

ERIC DAVID LIPP,
*Appellant*.

MEMORANDUM OPINION

Appeal from Riley District Court; JOHN F. BOSCH, judge. Opinion filed August 4, 2017. Affirmed in part and dismissed in part.

*Bobby J. Hiebert, Jr.*, of Law Office of Bobby Hiebert, Jr., LLC, of Salina, for appellant.

*James W. Garrison*, assistant county attorney, *Barry Wilkerson*, county attorney, and *Derek Schmidt*, attorney general, for appellee.

Before SCHROEDER, P.J., POWELL and GARDNER, JJ.

PER CURIAM:  Eric David Lipp appeals his jury trial conviction alleging two errors—the district court failed to grant his motion to suppress evidence from the traffic stop and the district court's denial of his dispositional and/or durational departure motion at sentencing. The officer observed a faded and obstructed paper tag on the motorcycle, thus, giving the officer reasonable suspicion to initiate the traffic stop. We have no jurisdiction to consider Lipp's sentencing appeal since the district court imposed a guideline sentence based on his criminal history score of A. We affirm in part and dismiss in part.

1

FACTS

Lipp was stopped for an obscured tag on his motorcycle after a controlled drug buy on August 6, 2014. Lipp was charged with possession with the intent to distribute at least 3.5 grams of methamphetamine; possession with the intent to distribute at least 3.5 grams of cocaine; possession with the intent to distribute at least 10 doses but less than 100 doses of methamphetamine hydrochloride; possession of drug paraphernalia used to distribute a controlled substance; and criminal possession of a firearm by a convicted felon.

Lipp moved to suppress the evidence obtained from the traffic stop. Lipp argued Officer Aaron Wright did not have reasonable suspicion of a traffic infraction—an obstructed tag on Lipp's motorcycle—because Lipp's motorcycle helmet did not obstruct the tag's visibility. He also argued Officer Wright unlawfully extended the duration of the stop by doing nothing to complete the stop without unnecessary delay. He contended Officer Wright delayed in conducting a records search to see if there were parole violations or warrants available since Lipp was not the individual Officer Wright anticipated pulling over.

The State argued Officer Wright had reasonable suspicion to perform a traffic stop because the temporary tag on the motorcycle was not clearly visible or legible. The State contended there was reasonable suspicion to further detain Lipp because he had not produced a valid driver's license with a motorcycle endorsement. It also argued Officer Wright had probable cause to detain and arrest Lipp for a previously observed drug transaction.

Detective Michael Parr, Sgt. Daryl Ascher, Lt. Mark French, and Officer Wright testified at the suppression hearing. The State introduced the dashcam footage from Officer Wright's vehicle into evidence. Lipp introduced a still image from the dashcam

2

footage, a picture of the back of the motorcycle taken after the motorcycle was impounded, and an audio recording of the controlled drug buy into evidence.

Detective Parr testified he conducted a controlled purchase of methamphetamine using a confidential informant (CI) on August 6, 2014. The CI, wearing a wire, purchased .5 grams of methamphetamine from Anita Albano. The CI then gave Albano a ride to the Cock and Bull Bar in Manhattan, Kansas, in order to purchase another 3.5 grams. Detective Parr observed the purchase at the Cock and Bull from about 50 yards away. He observed Albano and the CI meet with a white male wearing black leather and a white bandana—later identified as Lipp—and riding a Harley-Davidson motorcycle. He observed the CI give something—he could not tell what—to Albano, who gave it to Lipp.

Sgt. Ascher testified he followed Albano and the CI from the earlier controlled drug buy to the meeting at the Cock and Bull Bar. He indicated he observed the same transaction as Detective Parr, but he was farther away and could see less of the transaction because he did not have a good vantage point. Sgt. Ascher believed there was probable cause to arrest Lipp, but he opted to do so through a traffic stop to protect the CI.

Lt. French testified he observed the controlled drug buy at the Cock and Bull Bar from approximately a block and a half away. Since Albano introduced Lipp as Scotty, law enforcement believed him to be Scotty Pittenger, who was currently on probation. Law enforcement planned to make the stop and, based on the assumption it was Pittenger, arrest him for a motorcycle endorsement violation. Officer Wright called Lt. French during the traffic stop and informed him Lipp was not Pittenger. Lt. French acknowledged he said, "[t]his is going to hell in a handbasket" during his phone conversation with Officer Wright. Lt. French then arrived on scene and decided to arrest Lipp for the sale of methamphetamine based on the transaction at the Cock and Bull Bar. Lipp attempted to flee. At the suppression hearing, Lt. French explained he simply meant

3

the plan to take Lipp into custody without burning the CI was not going to work any longer.

Officer Wright testified Sgt. Ascher wanted an individual wearing leather chaps, a leather jacket, and white bandana riding a black motorcycle (Lipp) with a female passenger (Albano) stopped. Officer Wright performed the traffic stop because he could not read the temporary motorcycle tag; it appeared faded and was obstructed by a motorcycle helmet. He testified Lipp asked if the stop was related to his tag and Officer Wright told Lipp he could not read it. He asked Lipp to turn off the motorcycle and provide identification. Lipp provided an identification card, not a driver's license, and indicated he did not have a motorcycle endorsement yet because he was still taking the classes. Officer Wright indicated he tried running Lipp's identification card through the computer in his vehicle but had problems getting the system to work so he called dispatch to retrieve the information.

On cross-examination, Officer Wright admitted he observed no other traffic offenses except the obstructed tag. He testified he did not immediately contact dispatch because he attempted to scan Lipp's identification card on his computer while he called Lt. French. When he could not identify the status of Lipp's identification card, he called dispatch to run it for him. Officer Wright testified he diligently pursued the status of Lipp's driver's license and did not try to prolong the stop.

The district court also viewed the dashcam footage and listened to the audio recording of the CI's controlled drug buy. It denied the motion to suppress, finding:

- There was sufficient probable cause to have arrested Lipp based on the controlled drug buy;
- There was reasonable suspicion for the traffic stop based on the obstructed tag;

4

- The stop was not unreasonably long; and

- Lipp never produced a valid driver's license.

At trial, the jury found Lipp guilty on all counts and found Lipp possessed a firearm in furtherance of a drug felony. Lipp moved for a dispositional and/or durational departure. The district court denied his departure motion. Lipp's criminal history score was A. The district court sentenced him to the standard presumptive sentence of 136 months' incarceration for possession with the intent to distribute methamphetamine and enhanced the sentence by 6 months' imprisonment because Lipp committed a drug crime with a firearm. The district court also imposed the standard presumptive sentence for Lipp's remaining counts—except possession with the intent to distribute methamphetamine hydrochloride, which it determined was identical to possession with intent to distribute methamphetamine—and ran his sentences concurrently. Lipp timely appealed.

ANALYSIS

*The district court did not err when it denied Lipp's motion to suppress.*

In reviewing the granting or denial of a motion to suppress evidence, the court determines whether the factual findings underlying the trial court's suppression decision are supported by a substantial competent evidence standard. The ultimate legal conclusions drawn from those factual findings are reviewed under a de novo standard. The appellate courts do not reweigh the evidence or reassess the credibility of the witnesses. *State v. Patterson*, 304 Kan. 272, 274, 371 P.3d 893 (2016). Substantial evidence refers to legal and relevant evidence that a reasonable person could accept as being adequate to support a conclusion. *State v. Talkington*, 301 Kan. 453, 461, 345 P.3d 258 (2015).

5

The Fourth Amendment to the United States Constitution and § 15 of the Kansas Constitution Bill of Rights prohibit unreasonable searches and seizures. *State v. Ramirez*, 278 Kan. 402, 404, 100 P.3d 94 (2004). Since a traffic stop is a seizure under the Fourth Amendment, it must be reasonable to be valid. *State v. Smith*, 286 Kan. 402, 406, 184 P.3d 890 (2008). The State carries the burden to prove that a search and seizure was lawful. *State v. Cleverly*, 305 Kan. 598, 605, 385 P.3d 512 (2016).

Pursuant to K.S.A. 22-2402(1), "[w]ithout making an arrest, a law enforcement officer may stop any person in a public place whom such officer reasonably suspects is committing, has committed or is about to commit a crime and may demand of the name, address of such suspect and an explanation of such suspect's actions." Reasonable suspicion requires something more than an unparticularized suspicion or hunch; law enforcement must be able to articulate a particularized and objective basis for believing the person stopped is engaged in criminal activity. *State v. DeMarco*, 263 Kan. 727, 734-35, 952 P.2d 1276 (1998).

Lipp argues the district court erred when it found Officer Wright had reasonable suspicion to believe Lipp was committing a traffic infraction, specifically, operating a vehicle with an obstructed tag. However, substantial evidence supports the district court's finding. First, Officer Wright testified he could not read the tag because it appeared faded and had a motorcycle helmet or something else obstructing its view. Defendant's Exhibit A, a closeup picture of the rear of the motorcycle—sans helmet—shows a black saddlebag partially obscuring a faded temporary tag. The dashcam footage shows either a helmet or a saddlebag partially obscuring Lipp's temporary tag. Further, when Officer Wright approached him, Lipp immediately asked if the stop was related to his tag. Substantial evidence supports the district court's finding that Officer Wright believed Lipp was driving with an obstructed tag. As such, Officer Wright had reasonable suspicion to believe Lipp was committing a traffic violation—the stop was valid.

Lipp also argues the district court erred when it found there was probable cause to arrest Lipp based on the prior controlled drug buy. Lipp asserts the officers lied about wanting to protect the identity of their confidential informant and contends the officers detained him "in the hopes of locating some scintilla of information that would somehow be able to disguise their unlawful behavior." However, Lipp provides no evidence supporting either contention. Further, Lipp is essentially asking this court to reweigh the evidence and reassess the officers' credibility, something this court cannot do. See *Patterson*, 304 Kan. at 274.

Substantial competent evidence supports the district court's finding. Sgt. Ascher Det. Parr, and Lt. French all testified they observed the controlled drug buy. Det. Parr testified he observed the confidential informant hand Albano something, who gave it to an individual wearing black leather chaps, a leather jacket, and white bandana—Lipp. Det. Parr observed Lipp reach into the saddlebag of the motorcycle and hand something to Albano, who handed it to the confidential informant. Although Lipp introduced himself as "Scotty" during the controlled drug buy, both Det. Parr and Sgt. Ascher indicated Lipp was the individual they saw on the motorcycle with Albano. Officer Wright testified Sgt. Ascher requested he make a traffic stop involving an individual wearing black leather chaps, a leather jacket, and a white bandana and driving a black motorcycle with a female passenger.

These facts are substantial competent evidence supporting the district court's findings. Even if Officer Wright did not have reasonable suspicion to stop Lipp for an obstructed tag, he had probable cause to arrest Lipp based on the previous controlled drug buy. The traffic stop was reasonable.

Finally, Lipp contends the length of his detention rendered the traffic stop unreasonable and, therefore, unlawful. He argues he should have been cited for an expired tag and operating a motorcycle without the proper endorsement and then allowed

7

to leave the scene. He contends Officer Wright detained him longer than necessary to complete these tasks "while law enforcement sought a basis by which to manufacture his arrest." The district court denied the motion to suppress because it felt the stop was not unusually long. It also found Lipp never produced a valid license and Officer Wright was in the process of identifying Lipp when he attempted to flee. Lipp never explains why the officer was supposed to let him leave the scene of the traffic stop when he did not have a valid license to operate the motorcycle.

To be reasonable, the scope and duration of a traffic stop must be strictly tied to the circumstances that rendered the stop's initiation proper. *State v. Thompson*, 284 Kan. 763, 774, 166 P.3d 1015 (2007). During a routine traffic stop, an officer may:

- Request the motorist's driver's license, vehicle registration, and proof of insurance;
- Conduct a computer check;
- Issue a citation or warning; and
- Take steps reasonably necessary to protect officer safety.

However, an officer must pursue these tasks diligently and the stop can last only as long as necessary to complete them. *Thompson*, 284 Kan. at 774.

The record reflects the traffic stop lasted 10 minutes and 37 seconds between when Lipp stopped his motorcycle and when he attempted to flee. Lipp did not produce his identification until 1 minute and 18 seconds into the stop and did not finish complying with Officer Wright's instructions to turn off his motorcycle and get off of it until nearly 2 1/2 minutes into the stop. Officer Wright briefly returned to his vehicle—though he cannot be seen on the in-car footage, he seems to be typing something into the on-board computer.

Approximately 3 minutes into the stop, Albano asked if she could have someone come pick her up. Officer Wright asked her who her ride was—since she had been getting a ride from Lipp—where she lived, and where she was going. Officer Wright also instructed Lipp to stop messing with his motorcycle and acting fidgety because it was making Officer Wright nervous.

After another officer appeared—approximately 4 minutes into the stop—Officer Wright returned to his vehicle and can be heard calling Lt. French. According to Officer Wright's testimony, he simultaneously attempted to run Lipp's identification card through his computer. About 5 minutes into the stop, Officer Wright exited his vehicle, asked why Lipp had given an identification card instead of a driver's license, and attempted to verify whether the information on the identification card was correct.

Approximately 6 1/2 minutes into the stop, Officer Wright returned to his vehicle and contacted Lt. French again, advising him Lipp was the driver, not Pittenger. Officer Wright said he had not checked the identification card's validity and was trying to determine whether Lipp and Pittenger looked at all alike. He confirmed Lipp was wearing a white bandana.

A little more than 9 minutes into the stop, Officer Wright contacted dispatch to run Lipp's identification, indicating he was still having issues with his vehicle computer. A minute after Officer Wright contacted dispatch, Lipp jumped through the bushes in an attempt to flee the scene.

For most of the stop, the video reflects Officer Wright is taking steps to ensure officer safety and investigating the status of Lipp's license. Even though there are some small gaps in time during this 11-minute stop, Officer Wright testified during cross-examination that he diligently pursued the status of Lipp's driver's license. He also testified he was not trying to prolong the stop to wait for another officer to show up. Lipp

offered no evidence to counter Officer Wright's testimony. As such, there is substantial competent evidence supporting the district court's findings that Officer Wright was diligently trying to verify Lipp's identity when Lipp attempted to flee. Under the totality of the circumstances, the length of the stop was reasonable and justified.

Substantial competent evidence supports the district court's finding that Officer Wright had reasonable suspicion of a traffic infraction—driving with an obstructed tag. Further, substantial competent evidence supported the district court's finding there was probable cause to arrest Lipp based on the prior controlled drug buy. Finally, there is substantial competent evidence Officer Wright diligently attempted to verify Lipp's identity and the status of his driver's license. Officer Wright did not impermissibly exceed the reasonable time to complete a traffic stop. The district court did not err when it denied Lipp's motion to suppress.

*We do not have jurisdiction to address Lipp's sentencing complaint.*

Appellate courts have no jurisdiction to consider challenges to "any sentence that is within the presumptive sentence for the crime." K.S.A. 2016 Supp. 21-6820(c)(1); see *State v. Rizo*, 304 Kan. 974, 984, 377 P.3d 419 (2016). Here, the district court sentenced Lipp to the standard presumptive sentence for each of his convictions. Therefore, this court does not have jurisdiction to consider the denial of Lipp's dispositional and/or durational departure motion, and we dismiss for lack of jurisdiction.

Affirmed in part and dismissed in part.