NOT DESIGNATED FOR PUBLICATION

No. 127,966

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

STATE OF KANSAS,
*Appellant*,

v.

AARON MICHAEL KING,
*Appellee*.

MEMORANDUM OPINION

Appeal from Harper District Court; GATEN T. WOOD, judge. Submitted without oral argument. Opinion filed February 28, 2025. Affirmed.

*Tyler W. Winslow*, assistant solicitor general, and *Kris W. Kobach*, attorney general, for appellant.

*Robert W. Slinkard*, of Goering and Slinkard, of Medicine Lodge, for appellee.

Before BRUNS, P.J., SCHROEDER and CLINE, JJ.

PER CURIAM: Aaron Michael King was charged with aggravated criminal sodomy and aggravated sexual battery of N.M. while she was unconscious or physically powerless. During their investigation, a law enforcement officer asked N.M. to text King to see if he would talk about what occurred between the two. The officer directed N.M. what to say in some of these text messages, but she did not reveal the officer's involvement to King.

King moved to suppress these text messages he sent to N.M. He claimed his statements in the messages were made in violation of his Fifth Amendment right against

1

self-incrimination under the United States Constitution because he was never given his rights under *Miranda v. Arizona*, 384 U.S. 436, 86 S. Ct. 1602, 16 L. Ed. 2d 694 (1966), in connection with the exchange. He also claimed the statements were the result of an unlawful interrogation.

At the suppression hearing, the State did not introduce the texts or any other evidence describing the content of the text message exchange between N.M. and King. The district court granted King's motion and suppressed King's statements in the text messages after finding the State failed to produce sufficient evidence to satisfy its burden to show King's statements were voluntary; that is, the product of his free and independent will. See K.S.A. 22-3215(4); *State v. Dern*, 303 Kan. 384, 392, 362 P.3d 566 (2015). The district court found the State failed to carry that burden in part because it did not provide any of the statements at issue.

The State appeals the district court's decision, arguing *Miranda* does not apply because King was not in custody and his statements were voluntarily made. We agree that *Miranda* does not apply since King was not in custody when responding to the text messages. But the inquiry does not stop there. The Fourteenth Amendment's due process protections require courts to assess the totality of all the surrounding circumstances— both the characteristics of the accused and the details of the interrogation—to determine whether a confession is a free and unconstrained choice by its maker. *State v. G.O.*, 318 Kan. 386, 397-98, 543 P.3d 1096 (2024) (quoting *Schneckloth v. Bustamonte*, 412 U.S. 218, 226, 93 S. Ct. 2041 36 L. Ed. 2d 854 [1973]). Without the content of the text messages, the district court could not assess the totality of the circumstances surrounding King's statements, and neither can we. We see no error in the district court's suppression of King's text message statements and therefore affirm its decision.

## FACTUAL AND PROCEDURAL BACKGROUND

On November 15, 2021, the State charged King with aggravated criminal sodomy under K.S.A. 21-5504(b)(3)(B) and aggravated sexual battery under K.S.A. 21-5505(b)(2). After the text messages directed by law enforcement between N.M. and King were produced in discovery, King moved to suppress them.

In its response, the State argued that under *Miranda*, 384 U.S. at 473-74, law enforcement is under no obligation to inform a person of their *Miranda* rights if it is in a noncustodial setting. And the State maintained that King was not in law enforcement custody when he was texting N.M. The district court granted an evidentiary hearing to determine the: (1) "[s]tatus of N.M. as a government actor," (2) "[a]pplication of *Miranda*," and (3) "[e]xistence of coercion."

The State called Chief Kenny Hodson of the Anthony Police Department to testify at the suppression hearing. Hodson testified that while investigating the case, he interviewed N.M. and asked her to send text messages to King in hopes of getting King to talk about what happened. N.M. agreed to do so, and Hodson directed N.M. on what to say in "some" of the messages. But he said N.M. sent all the messages herself. Hodson testified that while these text messages were being exchanged, King was not in custody, and he did not know where King was at the time. Hodson admitted King was unaware of Hodson's involvement in the text messages exchanged and no *Miranda* warnings were given during that text exchange.

The text messages between King and N.M. were not introduced at the hearing, nor was any testimony provided about their content. Hodson did not remember how long after the alleged incident the text messages occurred. He testified the last time he viewed the text messages was two or three years ago and mentioned, "I got a subpoena this morning, saying I had to be in court today. And I was busy today." He said he no longer

possessed the messages. He did not identify any language he suggested to N.M. nor was any evidence offered about how many text messages were exchanged.

The State offered no other evidence at the hearing, and King offered no evidence. In its written order granting King's motion, the district court mentioned several foundational concerns about the messages, including the State's failure to produce them or evidence of any cellular phone number involved. It ultimately found the State provided insufficient evidence to determine whether *Miranda* applies or carry its burden of proof that the statements were voluntarily made. The court suppressed King's text message statements to N.M.

The State filed a notice of an interlocutory appeal under K.S.A. 22-3603 to challenge the district court's decision to suppress evidence.

REVIEW OF THE STATE'S APPELLATE CHALLENGE

The State contends King's statements should not be suppressed because *Miranda* does not apply and there was insufficient government action to render King's statements coerced. King contends the State failed to provide sufficient evidence for the court to make these determinations.

*Standard of review*

In reviewing a decision to suppress evidence, we must determine whether the factual findings underlying the district court's decision are supported by substantial competent evidence. Its ultimate legal conclusions are reviewed de novo. In doing so, we do not reweigh evidence or make credibility determinations. *State v. Patterson*, 304 Kan. 272, 274, 371 P.3d 893 (2016).

4

*A* Miranda *warning was not required because King was not in custody.*

As our Supreme Court explained in *State v. Morton*, 286 Kan. 632, 639, 186 P.3d 785 (2008), "the *Miranda* rule was designed to safeguard the Fifth Amendment privilege against self-incrimination by reducing the risk of a coerced confession:

> "'The Fifth Amendment to the United States Constitution guarantees the right against self-incrimination, including the right to have a lawyer present during custodial interrogation and the right to remain silent. "[T]o reduce the risk of a coerced confession and to implement the Self–Incrimination Clause", the United States Supreme Court in *Miranda v. Arizona*, 384 U.S. 436, 86 S. Ct. 1602, 16 L. Ed. 2d 694 (1966), concluded that states may not use statements stemming from a custodial interrogation of a defendant unless the State demonstrates the use of procedural safeguards to secure the defendant's privilege against self-incrimination. [Citations omitted.]"

But law enforcement officers need not administer *Miranda* warnings to everyone they question, only to those who are (1) in custody and (2) subject to interrogation. A custodial interrogation is defined as "questioning initiated by law enforcement officers after a person has been taken into custody or otherwise deprived of his freedom in any significant way." *Miranda*, 384 U.S. at 444.

Here, the district court found King was not in the custody of the Anthony Police Department at the time of the text message exchange. We agree with the State that this finding is sufficient to establish King was not in custody for the purposes of *Miranda*. The district court went too far when it then found "the State has failed to show that the Defendant was not otherwise in custody for purposes of *Miranda*" because "[t]he State's evidence shows no knowledge of where the Defendant was or was not on November 4, 2021." Under these circumstances, we disagree that the State was required to establish King's location at the time he sent his text messages. Such a requirement would be an

5

unreasonable and sometimes even impossible burden. And it impermissibly expands *Miranda*'s requirements.

The State need only show King was not in the custody of the law enforcement department involved in sending the text messages at the time King responded to those messages. It was not required to show he was not "otherwise in custody"—that is, not in the custody of another law enforcement agency. While such evidence could be relevant if, in fact, King was in the custody of another agency at the time he sent his text messages, no one has claimed that he was, and we do not think it is reasonable to require the State to prove this fact when it had no indication that was or could be the case.

This situation is somewhat like *State v. James*, 153 Haw. 503, 541 P.3d 1266 (2024). Like King, James was accused of sexually assaulting a victim. The Kauai Police Department interviewed the victim and directed the victim to contact James to discuss the alleged sexual assault. The victim and James texted about the incident. James moved to suppress the text messages and argued the victim acted as a government agent while texting. The Hawaii Supreme Court found that although the victim acted as a government agent, the police were not required to give James *Miranda* warnings because "there was no 'initial stop or detention' or other deprivation of freedom of action at the time." 153 Haw. at 512. Here, even if N.M. was acting on behalf of law enforcement, King was never stopped or detained at the time the texts occurred.

Given the circumstances, we find the State met its burden to prove by a preponderance of the evidence that King was not in custody for the purposes of *Miranda*. And because King was not in custody, we need not determine whether he was subject to interrogation. See *State v. Warrior*, 294 Kan. 484, 496, 277 P.3d 1111 (2012) (*Miranda* warnings are to be administered to those who are "in custody" *and* "subject to interrogation."). We find the court erred in determining the State presented insufficient

evidence to determine whether *Miranda* applies, and based on the record, we find it did not.

*The district court was presented insufficient evidence to decide whether King's statements were voluntarily made.*

Whether the State complied with *Miranda*, however, is not the end of the analysis. In *Morton*, 286 Kan. at 649, the Kansas Supreme Court held that "[u]nwarned inculpatory statements obtained through noncustodial interrogation, although not barred by *Miranda*, may nevertheless be inadmissible if they were obtained in violation of the due process voluntariness requirement." Meaning, even though "'the *Miranda* standard is the first line of inquiry in every case, . . . [c]onformity with *Miranda* . . . triggers the second line of analysis—the voluntariness standard.'" *Morton*, 286 Kan. at 649 (quoting 3 Ringel, Searches & Seizures, Arrests and Confessions § 24:5 [2d ed.1993]). The State bears the burden to prove by a preponderance of the evidence that the suspect was not in custody when interrogated and the statements were made voluntarily. *In re P.W.G*, 56 Kan. App. 2d 156, 163, 426 P.3d 501 (2018); see *State v. Guein*, 309 Kan. 1245, 1259-60, 444 P.3d 340 (2019).

A case-by-case evaluation is employed to determine whether coercion was impermissibly used in obtaining a statement. *State v. Swanigan*, 279 Kan. 18, 44, 106 P.3d 39 (2005). The Kansas Supreme Court has articulated two categories of factors to consider when answering this question: (1) those relating to the details of the interrogation, and (2) those relating to the accused. "Judges should continue to consider the totality of the circumstances—that is, the circumstances in both categories plus any other relevant circumstances—when deciding whether a state actor's coercive actions induced the confession." *G.O.*, 318 Kan. at 402. And while the district court need not address every factor, it should articulate the factors that influence its findings. 318 Kan. at 403.

In *G.O.*, the court updated the list of factors traditionally examined by adding "some other factors illustrated by caselaw." 318 Kan. at 402. The current nonexclusive list considers:

"Potential details of the interrogation that may be relevant include: the length of the interview; the accused's ability to communicate with the outside world; any delay in arraignment; the length of custody; the general conditions under which the statement took place; any physical or psychological pressure brought to bear on the accused; the officer's fairness in conducting the interview, including any promises of benefit, inducements, threats, methods, or strategies used to coerce or compel a response; whether an officer informed the accused of the right to counsel and right against self-incrimination through the *Miranda* advisory; and whether the officer negated or otherwise failed to honor the accused's Fifth Amendment rights.

"Potential characteristics of the accused that may be relevant when determining whether the officer's conduct resulted in an involuntary waiver of constitutional rights include the accused's age; maturity; intellect; education; fluency in English; physical, mental, and emotional condition; and experience, including experience with law enforcement." 318 Kan. at 403.

And in *State v. Sharp*, 289 Kan. 72, 81, 210 P.3d 590 (2009), our Supreme Court described the weight a court should give the factors to be considered:

"'[T]hese factors are not to be weighed against one another . . . , with those favorable to a free and voluntary confession offsetting those tending to the contrary. Instead, the situation surrounding the giving of a confession may dissipate the import of an individual factor that might otherwise have a coercive effect. Even after analyzing such dilution, if any, a single factor or a combination of factors considered together may inevitably lead to a conclusion that under the totality of circumstances a suspect's will was overborne and the confession was not therefore a free and voluntary act. [Citations omitted.]'"

We agree that—when examined in isolation—several factors appear to weigh in favor of finding King's statements were voluntarily made. But we find the inquiry is

8

necessarily incomplete without knowing the content of the text messages between N.M. and King. The record is also scant on the extent of the officer's involvement in crafting the language of N.M.'s messages to King. Without this information, for example, we cannot determine the officer's fairness in conducting the interview, including any promises of benefit, inducements, threats, methods, or strategies used to coerce or compel a response. Nor can we consider whether any psychological pressure was brought to bear. In short, the content of the statements sought to be suppressed and what was said to elicit those statements is fundamental to determining the voluntariness of those statements.

We also believe more evidence about the officer's involvement in the text messages exchanged would be relevant. For example, when asked if he directed what N.M. should say in the text messages, Chief Hodson simply responded "some." No follow-up questions were asked on this topic. And no evidence was presented as to which language Hodson directed N.M. to use or any language that either N.M. or King used in any of the messages. Knowing the extent of the officer's involvement in the dialogue would also be necessary to determine whether the officer was "interrogating" King.

We pause to clarify that we do not hold the officer's involvement in the text messages exchanged rose to the level of an interrogation of King for the purposes of his Fifth Amendment due process protections. Rather, we hold that the district court lacked sufficient information to make this threshold determination without the content of the text messages and more information about the officer's involvement. Such evidence is essential to conduct the necessary constitutional inquiry, and we find the district court correctly ruled the State failed to carry its burden when it failed to provide it.

Affirmed.